### PERRETT v. WEGNER.

(Court of Civil Appeals of Texas. Galveston. July 1, 1911.)

1. MUNICIPAL CORPORATIONS (§ 182*)—COMMISSION GOVERNMENT—CHIEF OF POLICE—NOMINATION—APPOINTMENT.

Galveston City Charter, § 19 (Sp. Acts 28th Leg. c. 37), requires the board of commissioners, at the first regular meeting after their qualification or as soon thereafter as possible, to appoint a chief of police, and section 20 provides that the police and fire commissioner at the first meeting of the board after their qualification shall present to the board his recommendations of persons for appointment in the police department. Held, that the police and fire commissioner had a right to nominate for the office of chief of police, and, unless he failed to make such nomination within the time prescribed, the board had no right to appoint on the nomination of any other commissioner.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 182.*]

2. MUNICIPAL CORPORATIONS (§ 182*)—COMMISSION GOVERNMENT—CHIEF OF POLICE—APPOINTMENT.

The police and fire commissioner having failed to nominate a second candidate for chief of police at the second meeting of the board, after his first candidate had been rejected, the board could appoint a chief of police on nomination of another commissioner, and the person so appointed was legally entitled to the office.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 182.*]

3. OFFICERS (§ 82*)—RIGHT TO OFFICE.

Where, in a suit by a de facto incumbent to determine the right to the office of chief of police of a city, plaintiff's application for a temporary injunction was denied on preliminary hearing, it was improper to grant a temporary injunction to defendant on a cross-bill for the possession of the office under the rule that a

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

temporary injunction will not be granted in aid of one who sues for the possession of an office held by a de facto officer.

[Ed. Note.—For other cases, see Officers, Dec. Dig. § 82.*]

**4. OFFICERS (§ 82*)—POSSESSION OF OFFICIAL PROPERTY—INJUNCTION.**

The right to the possession of official property and the archives and records of a public office cannot properly be determined on the hearing of an application for a temporary injunction in a suit to determine title to the office.

[Ed. Note.—For other cases, see Officers, Dec. Dig. § 82.*]

**5. MUNICIPAL CORPORATIONS (§ 57*)—COMMISSION FORM OF GOVERNMENT — NATURE AND CHARACTER.**

The commission form of municipal government, while not following the tendency previously shown in the evolution of free popular government to avoid as far as possible the concentration of power in any one governmental office, is nevertheless a democratic form of government, which rests at last on the consent of a majority of the governed.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 57.*]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by W. H. Perrett against Ernst Wegner to try title to the office of chief of police of the city of Galveston. Judgment for defendant, and plaintiff appeals. Affirmed in part, and reversed and rendered in part.

Marsene Johnson, John C. Walker, and Clough & Fuller, for appellant. D. D. McDonald, for appellee.

PLEASANTS, C. J. The question involved in this suit is the right to the possession of the office of chief of police of the city of Galveston. On the 8th day of June, 1911, the appellant, W. H. Perrett, was the de jure and de facto occupant of said office, having been regularly appointed thereto by the board of commissioners of said city on May ———, 1909, for a term of two years, and until his successor should be appointed, and should qualify as such officer. On May 9, 1911, at an election regularly held for that purpose, the voters of said city of Galveston elected a board of commissioners composed of the following citizens: Lewis Fisher, mayor, and I. H. Kempner, H. C. Lange, V. E. Austin, and A. F. Norman, commissioners. The members of the board so elected in due time qualified as such, and at their first regular meeting after their qualification proceeded in accordance with the provisions of the city charter to select the members of the board to whom the special charge of the several departments of the city government should be respectively confided. I. H. Kempner was selected as commissioner of finance and revenue, H. C. Lange, commissioner of waterworks and sewerage, Valery E. Austin, commissioner of streets and public property and A. P. Norman, police and fire commissioner.

Section 8 of the city charter (Sp. Acts 28th Leg. c. 37) provides that: "The said board of commissioners shall, by a majority vote of all the members thereof, have the power to appoint all officers and subordinates in all departments of the said city."

Sections 19 and 20 of said charter contain the following provisions:

"Sec. 19. The board of commissioners at their first meeting after their qualification, or so soon thereafter as possible, shall select the following officers, to wit: A secretary, a treasurer, an attorney, a recorder or judge of the corporation court, an assessor and collector of taxes, a chief of police, a chief of the fire department, an engineer who shall also be superintendent of streets, an auditor, a secretary of waterworks and sewerage department, a harbor master, a sexton, a superintendent of waterworks and sewerage, an engineer of the waterworks, and assistant engineer of the waterworks; and, if deemed necessary by the board, an inspector of waterworks and sewerage plumbing, an assistant chief of police, an assistant of the fire department and an assistant city engineer. All said officers so elected shall hold their offices for two years, and until the election and qualification of their successors, unless removed by the board of commissioners under the authority vested in it by this act. No one shall be eligible to appointment or election to the foregoing offices or any of them unless he be at the time of his appointment a qualified voter in the city of Galveston."

"Sec. 20. Said board of commissioners shall have full power and authority to establish and maintain a police department to be composed of a chief of police, an assistant chief of police, two sergeants and such number of patrolmen or policemen as such board may deem necessary, said officers and members of said police department to be appointed, and their compensation and duties to be fixed, defined and regulated as hereinafter provided; and shall also have power and authority to establish and maintain a fire department, to procure fire engines and other apparatus for the extinguishment of fires, and provide engine houses for keeping and preserving the same, and said fire department shall be composed of a chief of the fire department, an assistant chief of the fire department, and such number of firemen as said board may deem necessary, the officers and members of said fire department to be appointed and their compensation and duties to be fixed, defined and regulated as hereinafter provided. At the first meeting of said board of commissioners after their qualification, or as soon thereafter as possible, it shall be the duty of the commissioner who may be selected as police and fire commissioner to prepare and present to the board of commissioners in writing his recommendations of persons for appointment, both in

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

said police and fire departments, based on the integrity of character and physical and intellectual capacities of the applicants for such positions; and the said board of commissioners shall, upon receiving such recommendations, select therefrom proper persons to fill such positions in the departments respectively as may be by them deemed wise and necessary; and upon the failure or refusal of said police and fire commissioner to present said recommendations at the second regular meeting of said board, it shall thereafter proceed to elect proper persons to fill such positions: Provided, however, that so far as it may be practicable and consistent with good order, discipline and improvements of the public service, it shall be the duty of said police and fire commissioner to prefer in recommendations to said board for appointment to the police and fire departments, respectively, those men who have proved themselves capable, good and efficient in the performance of their duties, and the said board shall give due weight to such recommendations. * * *"

These are the only provisions of the charter which have any direct bearing upon the questions decided in this opinion.

At the first meeting of the board of commissioners, held as before stated on May 25, 1911, Commissioner Norman stated to the board, after it had elected or appointed all of the officers and subordinate employés for the several departments of the city government, except the police and fire departments, that he was not prepared to make nominations for the positions of chief of police and chief of the fire department, but that he would do so at the next regular meeting. No objection was made to this postponement, after Commissioner Kempner had received from Mr. Norman the assurance that the postponement was not merely for the purpose of delay.

At the next meeting of the board, held on June 1st, Mr. Norman nominated the appellant, W. H. Perrett, the then incumbent of the office, for reappointment as chief of police. The board refused by a vote four to one to elect or appoint Mr. Perrett. After the defeat of Mr. Perrett, Commissioner Norman did not offer at that meeting of the board any other nomination for the office of chief of police, nor furnish any names for appointment to any position in the police department. He testified as follows as to his reasons for not then making other nominations, and as to what occurred at that meeting as to such additional nominations: "My object in not presenting the balance of the police slate was I wished to confer with the head before nominating them and he hadn't been elected. I said to the board, however, on that occasion, that at our next regular session I would present the balance of the first slate and also nominate another name for the position of chief of police, which I did. And the board had no objection, and im-

mediately after the meeting adjourned." On cross-examination he testified: "At the second meeting, held June 1, 1911, I did not make any further nominations for the position of chief of police or in the police department, except that of W. H. Perrett. That was the only one that I made at the second meeting. At the meeting of June 1st, immediately after the rejection of Mr. Perrett as the chief of police, the board proceeded with other business. I was not asked to have any other nominations in writing. I could have nominated others if I had to, but I did not make any other nominations. Immediately after the rejection of Chief Perrett, the board proceeded with other business. I was neither prevented nor refused from making other nominations."

At the third meeting of the board Mr. Norman presented the names of persons for appointment to all of the positions in the fire department, except that of chief, which position had been filled at the previous meeting. All of the persons so nominated by him were elected by the unanimous vote of the board. He then requested the board to state to him "for the benefit of the people of Galveston" what objection there was to Mr. Perrett as chief of police. It does not appear that any response was made to this request, and thereupon Mr. Norman presented the name of Mr. David A. Henry, who for several years has been a sergeant on the police force of the city, for the position of chief of police. The board by a vote of four to one refused to appoint Mr. Henry. Commissioner Kempner then called for the opinion of the city attorney, which had been previously requested by members of the board, upon the questions of whether Mr. Perrett was entitled to his office and to draw his salary after the board had refused to reappoint him, and whether the board could proceed to appoint a chief of police who was not nominated by Commissioner Norman. In a written opinion presented to the board both of these questions were answered by the city attorney in the affirmative. The subsequent proceedings of the board in the matter of electing a chief of police are thus stated in the testimony of Mr. Norman: "Immediately after the opinion, after we got through wrangling following the city attorney's statement, Mr. Kempner, the commissioner of finance and revenue, asked the city attorney then, 'Have I the right to nominate?' And he says, 'You have.' 'Well, then, we will settle this thing right now. I place in nomination Ernst Wegner, Sr., for chief of police.' And the vote was taken, they giving me no opportunity at all, which resulted in the election of Mr. Wegner by a vote of four to one, I voting in the negative. * * * The point of order was made against me, and sustained after the discussion of the opinion rendered by the city attorney, and I was attempting to get recognition from the chair at the time for the purpose of presenting further nominations.

The mayor said I was out of order, and would not allow me to talk." He further testified: "I am still ready and willing, as the board may meet from time to time, to make such further and additional nominations for chief of police and subordinates until a chief is confirmed by the board. I have never failed or refused to make nominations for chief of police." On June 10th, after his election by the board as before shown, the appellee, Wegner, qualified as chief of police of the city of Galveston by giving the bond, and taking the oath prescribed by law. He then made demand upon appellant for the possession of the archives, records, and property belonging to the office, which demand was refused. Both appellant and appellee are qualified under the provisions of the city charter to hold the office of chief of police. The salary paid the chief of police by the city is $1,500 per annum.

This suit was brought by appellant on June 10, 1911, to restrain appellee from intruding into the office of chief of police and interfering with appellant in the possession, and in the exercise of the duties of said office. At the time of the filing of the petition application was made for temporary injunction. Upon the hearing of this application for temporary injunction, the defendant appeared and filed an answer containing a general demurrer and general denial, and also a special plea, averring, in substance, the facts of his election and qualification to the office, as above set out. The answer contains the following prayer: "Wherefore this defendant prays that the application and petition for injunction contained in plaintiff's pleadings be in all things denied, and that said writ be not granted by this honorable court, and that plaintiff be required by order of this honorable court to vacate the said office which he is now holding contrary to law, and turn over all of the books, papers, archives, and property belonging or appertaining to the same to this defendant, and that all costs in this behalf incurred be adjudged against plaintiff, and for general and special relief, and will thus ever pray. * * * The defendant also by cross-action set out all of the facts pleaded in his first amended answer, and prayed that on final hearing he have judgment for the title and possession of the said office of chief of police of the city of Galveston, and for peremptory mandamus, directing and requiring the said plaintiff to vacate the office of chief of police, to no longer hinder or prevent the defendant in the management and conduct of said office, and to deliver to the defendant all of the books, papers, archives, records, and other property now in the possession of him, the said W. H. Perrett, the chief of police, belonging or appertaining to the said office of the chief of police, and for costs, etc. To this answer appellant filed a supplemental petition, specially excepting to each of the material averments of the answer, and specially denying the allegations of fact contained in the answer. Upon this hearing the facts above set out were shown. After hearing the evidence, the court made and entered the following order: "On this 14th day of June, A. D. 1911, in open court came on to be heard said numbered and entitled cause, the same being an application for temporary injunction prayed for by plaintiff, W. H. Perrett, against defendant, Ernst Wegner, Sr., who resisted same and asked for affirmative relief by way of cross-bill, in which proceedings and suit A. P. Norman filed an application to be made a party plaintiff, and the city of Galveston and the mayor and all commissioners of said city other than A. P. Norman by an appropriate pleading sought permission to intervene and become parties therein, and thereupon came plaintiff, W. H. Perrett, and the defendant, Ernst Wegner, Sr., both in person and by their respective attorneys, and announced ready for trial. And all of the matters in controversy, as well of fact as of law, were submitted to the court, a jury having been expressly waived, and the court, having heard and fully understood the pleadings, evidence, and argument of the counsel, is of the opinion that the law is in favor of the defendant, Ernst Wegner, Sr., and against the plaintiff, W. H. Perrett, and that none of the other petitioners have the right to become parties to and in said suit. It is therefore ordered, adjudged, and decreed by the court that the application of A. P. Norman, the city of Galveston, and the other city commissioners than the said A. P. Norman to be made parties be refused, and that the temporary injunction applied for by the plaintiff, W. H. Perrett, be refused. It is further ordered on the cross-bill of the defendant, Ernst Wegner, Sr., that on the said Wegner giving bond in the sum of one thousand dollars ($1,000) a temporary injunction issue in his favor against plaintiff W. H. Perrett, enjoining and restraining the said Perrett from exercising the powers of chief of police of the city of Galveston, and from in any manner interfering with the said Wegner in his exercise of the powers of said office, and in taking possession of said office, and the records and papers and property thereto pertaining, and that all costs of suit be adjudged against plaintiff, W. H. Perrett, and that the clerk have his execution against the respective parties hereto, for costs in this suit by them respectively incurred. From which judgment and decree the plaintiff, W. H. Perrett, in open court gives notice of appeal." From this order the plaintiff below prosecutes this appeal.

It would serve no useful purpose and would unnecessarily extend this opinion to discuss in detail the several assignments of error contained in appellant's brief. The controlling question presented by the record is whether the appellee, Wegner, was legally elected to the office of chief of police by the

board of commissioners of the city of Galveston at the meeting of said board on June 8, 1911. We think this question should be answered in the affirmative.

[1] By the express provisions of section 8 of the city' charter before quoted the power to elect or appoint all officers and subordinates in all departments of the city is expressly confided to a majority of the board of commissioners. The time and manner of appointment to fill the office of chief of police are prescribed by sections 19 and 20 of the charter. (Sp. Acts 28 Leg. [1903] c. 37). Section 19 makes it the duty of the board of commissioners at the first regular meeting after their qualification, or as soon thereafter as possible, to appoint a chief of police for the city, and section 20 makes it the duty of the police and fire commissioner at the first meeting of the board after their qualification, or as soon thereafter as possible, to propose and present to the board in writing his recommendations of persons for appointment in the police department. The first paragraph of this section which authorizes the board of commissioners to establish and maintain a police department provides that the department shall be composed of a chief, assistant chief, two sergeants, and such number of patrolmen or policemen as the board may deem necessary, "said officers and members to be appointed as hereinafter provided." We think it clear that, construing this section as a whole, it was the intention of the Legislature in its enactment to give to the police and fire commissioner the right to nominate for the office of the chief of police, and, unless such commissioner failed or refused to make such nomination within the time prescribed in said section, the board of commissioners had no right upon the nomination of any other commissioner to appoint any person to said office. Jones v. Doherty, 56 S. W. 596; Brumby v. Boyd, 28 Tex. Civ. App. 164, 66 S. W. 874.

[2] The charter contemplates that a majority of the board and the police commissioner shall act together in making such appointment. This is a wise provision in view of the fact that the police commissioner is given special charge of the police department. It is obvious that the good of the department is subserved by entire harmony between the chief and the police commissioner, and its efficiency might be greatly lessened by the appointment of a chief objectionable to the police commissioner, and with whom he could not work in harmony. But this exclusive right of the police commissioner to nominate for the office of chief of police is expressly limited in time by the provision of the charter before quoted. The best interest of the department demands that there shall be as little delay as possible in the appointment of a chief, and the charter expressly requires that this appointment be made "as soon as possible." While due consideration is given to the advantages to be derived from the appointment of a chief acceptable to the police commissioner and to this end the commissioner is given the right to make nominations, the prompt election and appointment of a chief is regarded of greater importance, and it is therefore provided, in effect, that, upon the failure or refusal of the commissioner to make suitable nominations for said office at the second regular meeting, the board may proceed to make such appointment on its own motion. We think the facts before set out, which are undisputed, show such failure on the part of Commissioner Norman to make nominations or recommendations at the second meeting of the board of suitable persons from which the board could select a chief of police as authorized the board to proceed at the next meeting to make such appointment without the recommendation of the commissioner. He only made the one recommendation, and, when the board refused to accept his recommendation and appoint his nominee, he made no further nomination, but informed the board that he would make another nomination at the next meeting. The charter required that he make it at that meeting; and, while he doubtless understood that the board acquiesced in the postponement and would waive its right to make the appointment at its next meeting without his recommendation, the other members of the board made no such agreement, and, if they had so agreed, it was not only their right, but their duty, to make the appointment as soon as possible, and any agreement, tacit or express, which tended to prevent the performance of this duty, would have been void. It was certainly not intended by the Legislature in enacting these provisions of the charter that a police commissioner could delay the appointment of a chief of police by making only one recommendation for such appointment at each succeeding meeting of the board, and by so doing either force the board to appoint a person whom it did not regard a proper person for the office, or retain in office indefinitely a chief whom the board regarded unfit for the position. Such a condition would be intolerable, and it was to prevent the possibility of its occurrence that the charter provided that, in event the police commissioner failed to make recommendations at the second meeting from which in the judgment of the board a proper person to fill the position could be elected, the board should proceed to fill the office upon its own motion. In neither of the cases above cited was there any limitation of the exclusive right to nominate to the office dispute given the mayor in the charter under consideration in the Brumby Case, or that given the police board in the charter construed in the Jones Case, and these cases are therefore not in conflict with the conclusions above stated. In the Jones Case, in which the charter of the city of Galveston in force just prior to the adoption of

the present charter was construed, it was pointed out in the opinion that the Legislature had failed to provide for the contingency of a failure of the police board to nominate suitable persons for policemen, and, because no such provision was made in the charter, there was no power in the council to appoint policemen who had not been recommended by the police board. This defect in the old charter was most likely in the mind of the framers of the present charter when they placed therein the provisions giving the primary and ultimate power to appoint all city officers to the majority of the board of commissioners and limiting the exclusive exercise of the right given the police commissioner to nominate persons for office in his department to the two first meetings after the election and qualification of the members of the board. From these conclusions it follows that that portion of the order of the trial court refusing appellant's application for injunction must be affirmed.

[3] But the court was not authorized upon a preliminary hearing of plaintiff's application for temporary injunction to grant a temporary injunction in defendant's favor upon his cross-bill for the possession of the office. Aside from the question of the sufficiency of defendant's pleadings to enable him to this relief in that there is no specific prayer therefor, it is well settled that a temporary injunction will not be granted in aid of a plaintiff who sues for the possession of an office held by a de facto officer. McAllen v. Rhodes, 65 Tex. 348. If defendant's cross-bill be regarded as a suit of this kind, a temporary injunction cannot be granted in aid thereof.

[4] If the cross-bill be regarded merely as a suit to recover the archives, records, and other property belonging to the office, it is manifest that the right to the possession of said property could not be properly determined on the hearing of plaintiff's application for temporary injunction. For these reasons we think that portion of the order appealed from granting the defendant a temporary injunction should be reversed and vacated. We deem it not improper to add that there is nothing in the record which reflects upon the good faith or patriotic motives of any member of the board of commissioners. The whole controversy seems to have arisen over an honest disagreement as to the extent of the powers conferred by the charter upon the board of commissioners and the police commissioner, respectively, in the appointment of a chief of police.

[5] While the commission form of municipal government, which seems to have had its origin in the charter under which the city of Galveston now operates its city government, does not to the extent usual in city charters follow the tendency heretofore shown in the evolution of free popular government to avoid as far as possible the concentration of power in any one governmental officer, it is nevertheless a democratic form of government, which rests at last upon the consent of a majority of the governed. The several commissioners are given special charge of the respective departments to which they are assigned, and the powers conferred upon each commissioner in the management of his department are large and comprehensive, but he must, unless otherwise expressly authorized by the charter, exercise such powers in subordination to the will of the majority of the board who represent the supreme power, the will of the people.

Judgment will be entered in accordance with the conclusions above expressed.

Affirmed in part. Reversed and rendered in part.