### LEVY et al. v. RIVAUX.

#### No. 10360.

Court of Civil Appeals of Texas. Galveston.

July 10, 1935.

Rehearing Denied July 18, 1935.

Royston & Rayzor, Marion J. Levy, Terry, Cavin & Mills, and Williams, Neethe & Williams, all of Galveston, for appellants.

H. E. Kleinecke, Jr., and McDonald & Wayman, all of Galveston, for appellee.

LANE, Justice.

At a regular biennial election held in the city of Galveston on the 14th day of May, 1935, for the election of city officers, Adrian F. Levy was elected and qualified as mayor-president of the board of commissioners of said city; A. J. Peterson was elected and qualified as commissioner of finance and revenue; Oscar E. Casey was elected and qualified as water works and sewerage commissioner; Patrick H. Wilson was elected and qualified as commissioner of streets and public property; and George Rivaux was elected and qualified as police and fire commissioner. Upon the election and qualification of these several parties, each of them entered into the performance of their respective duties as such officers.

On the 29th day of May, 1935, George Rivaux brought this action against the mayor and all the other commissioners, and alleged the election and qualification of the several officers as above stated; that he was a resident citizen and taxpayer of the city of Galveston; that said elected and qualified officers constituted the board of commissioners of the city of Galveston;

that such board held its first meeting on the 23d day of May, 1935; that at such meeting he, Rivaux, in keeping with provisions of the charter of the city, prepared and presented to the board of commissioners, in writing, his recommendations of persons for appointment both in the police and fire departments, based on the integrity of character and physical and intellectual capacities of such persons. He attached to his petition as an exhibit a list of the names of the persons and the positions for which they were recommended.

He further alleged: That "each and all of the persons named on said list are well qualified for the positions for which they were recommended, and in recommending them he preferred the men who have proved themselves capable, good and efficient in the performance of their duties, and further avers that each one, if selected, would make a suitable, capable, efficient and trustworthy officer and employee and would cooperate and work with plaintiff in maintaining efficient Police and Fire Departments.

"That said Board of Commissioners, at the meeting aforesaid, received plaintiff's said recommendations of persons for appointment but failed, upon receiving such recommendations, to select therefrom proper persons to fill any of the positions in the respective departments; that defendants, upon a motion made and carried, referred plaintiff's recommendations to the Board of Commissioners as a whole for future action.

"That is, under the terms and provisions of the Charter of the City of Galveston, the duty of defendants, upon receiving such recommendations, to select therefrom proper persons to fill the positions in the respective departments.

"That he has been informed and believes and, therefore, alleges as a fact, that defendants had agreed with each other that they will vote together, and, by their votes at the next meeting of the Board of Commissioners to be held at 10:00 o'clock A. M. May 30, 1935, and succeeding meetings of the Board of Commissioners, to select some of the persons from among those recommended by plaintiff and to select persons for some of the positions in the Police and Fire Departments who have not been recommended by plaintiff and whose names are not shown on the list hereto attached Marked Exhibit 'A'. In this connection, plaintiff alleges that he has recommended two or more persons for such positions to be filled so that defendants might have a wide choice in making selections and stands ready and willing, if any of the persons so recommended are not acceptable, to forthwith recommend other persons.

"That at the municipal election aforesaid, defendants were candidates of what is known as the 'City Party' for the respective positions to which they were elected, and that plaintiff was a candidate of a rival party known as the 'New Deal Party' for the position of Police and Fire Commissioner and was the only one of the candidates of said last named party who was elected to office. In this connection, plaintiff alleges that if defendants select persons for any of the positions in the Police and Fire Departments who have not been recommended by plaintiff, this plaintiff will not only be deprived of the prerogatives of his office as Police and Fire Commissioner, but will have fostered upon him a personnel, in part at least, from whom he cannot and will not receive cooperation and harmonious action in carrying on the work of the departments under his jurisdiction. Plaintiff alleges that such a situation would be detrimental to the public welfare and will impede and hamper plaintiff in maintaining efficient Police and Fire Departments.

"That he has no adequate remedy at law and if the threatened action is taken, irreparable injury will be done to the citizens of Galveston, to the Police and Fire Departments, and to plaintiff as Police and Fire Commissioner."

His prayer was for an injunction to restrain the defendants constituting the board of commissioners from selecting or appointing persons to positions in the police and fire departments in the city of Galveston whose names are not shown on the list above mentioned, or which may be submitted by plaintiff to the board of commissioners, and that on final hearing such injunction be made permanent.

All defendants answered by general demurrer only.

The trial judge overruled defendants' general demurrer, and upon the verified petition of the plaintiff, judgment was rendered granting the injunction as prayed for, reciting that the same should remain in force until a final hearing. From such judgment, the defendants have appealed.

Upon request for conclusions of law the court filed certain conclusions wherein it

is recited and stated, among other things, that:

"Section 20 of the Charter, after providing that it shall be the duty of the Police and Fire Commissioner, at the first meeting, or as soon thereafter as possible, to prepare and present in writing his recommendations of persons or specified qualifications for appointment in both of his Departments, then provides that the 'Board of Commissioners shall, upon receiving such recommendations, select therefrom proper persons to fill such positions in the Departments respectively as may be by them deemed wise and necessary'. This language, it seems to me, is plain and unambiguous, and, I think without doubt, gives to the Police and Fire Commissioner the exclusive right to nominate persons for appointment both in the Police and Fire Departments, if he acts within the time prescribed by the charter, and recommends suitable and proper persons. While it is true that Sections 8, 12, 19 and 20 of the Charter, when considered together, vest in the Board of Commissioners as a whole the exclusive power to select persons to fill positions in the Police and Fire Departments, and vests in the Board a discretion in making selections, yet unless adequate reason is shown, the Board does not have the right to select and appoint persons who have not been nominated by the Police and Fire Commissioner. No cause or reason has been shown for disregarding the recommendations of Plaintiff. The discretionary powers vested in the Board to select persons for the Police and Fire Departments is expressly limited by the language quoted above which, under the admitted facts, must be given effect." Citing Perrett v. Wegner (Tex. Civ. App.) 139 S. W. 984; Brown v. Uhr (Tex. Civ. App.) 187 S. W. 381; Uhr v. Lambert (Tex. Civ. App.) 188 S. W. 946; and Uhr v. Brown (Tex. Civ. App.) 191 S. W. 379.

Thus it is shown upon what theory the trial court granted the temporary injunction.

Appellants' first assignment is as follows: "The Court erred in overruling the general demurrer of appellants to plaintiff's petition because the facts therein alleged do not show appellee to be entitled to have appellants restricted in making appointments of persons to positions in the police and fire departments by a writ of injunction in the terms prayed for by appellee."

We sustain the assignment. We think the general demurrer to the plaintiff's petition should have been sustained for the reasons stated in the above-quoted assignment. The facts alleged in the petition fail to state any fact or facts, in view of the provisions of the city charter, which will be hereinafter stated, which would entitle appellee to the injunction prayed for.

Appellants by their first proposition also insist that the demurrer should have been sustained upon the further ground that appellee brought this suit in his individual capacity, as distinguished from a suit in his official capacity on behalf of the city in aid of the enforcement of police regulations, and, as such, is not cognizable by a court of equity.

While the question last presented is one not free from doubt, we are not prepared to hold that the trial court erred in overruling appellants' general demurrer to appellee's petition on the question last presented. The suit brought by appellee is not one, we think, brought in his individual capacity, but is one brought in his official capacity as police and fire commissioner, and, as such, is cognizable by a court of equity. Every right alleged in the petition, and alleged to have been transgressed, is one that pertains to appellee's alleged official rights and duties as police and fire commissioner. While it is true that in the introductory part of the pleading appellee alleged that he is a resident citizen and taxpayer of Galveston, it is made plain in stating the "cause of action" that no right is asserted in the capacity of citizen and taxpayer. There is not a thought expressed or implied in the petition tending to indicate that appellee is seeking to protect his individual rights as a citizen or as a taxpayer. He has attempted to state a cause of action only in respect to his rights and prerogatives as police and fire commissioner.

By appellants' second assignment, it is contended that the court erred in granting the injunction here complained of, in that the same is an unwarranted interference with and restriction of appellants in the performance of the legal powers and duties vested in and imposed upon them by the provisions of the charter of the city relating to appointments of members of the police and fire departments.

Appellants' propositions under assignment No. 2 are as follows:

"The charter of the City vested in the Board of Commissioners the power of appointing persons to positions in the police

and fire departments and the exercise of that power by that Board acting through the majority of its members is not restricted to selection of only such persons as the Commissioner of Fire and Police may recommend.

"The right given by the charter of the City to the Police and Fire Commissioner with reference to recommendations of persons for appointments in the police and fire departments is the one of having such recommendations as he may make in writing at the first and second meetings of the Board, either or both, considered and acted on before appointments can be made upon motion or nomination of any other member, but such right given to that Commissioner does not impose upon the other members of the Board any duty to select or appoint any person so recommended not considered by them suitable and proper for the appointment, and in the event the Police and Fire Commissioner does not within the time prescribed recommend persons who are in the judgment of the majority of the Board proper persons to appoint the Board can not thereafter be restricted in making appointments to only such persons as the Police and Fire Commissioner may recommend."

We sustain the contention here made. As shown by the plaintiff's verified petition, the officers involved in this suit were elected on the 14th day of May, 1935; that nine days thereafter, to wit, May 23, they, constituting the board of city commissioners, held their first meeting; that at such meeting appellee Rivaux, the elected and qualified police and fire commissioner, presented to said board, in writing, a list of the names of persons whom he recommended for appointment to positions in the police and fire departments of the city, setting out the position for which the several persons were respectively recommended; that at said first meeting the board of commissioners did not make any appointments to office of any of the persons recommended by appellee, but passed a motion referring such recommendations for future action of the board; all members of the board, however, except appellee, agreeing that they would at the next meeting of the board, set for May 30, 1935, and succeeding meetings of the board, select (confirm) some of the persons from among those recommended by appellee, Rivaux, and would select other persons for positions who were not shown on the list of persons recommended by appellee.

Forestalling any contemplated action of the board of commissioners at any second or subsequent meeting of the board to select appointees, appellee brought this action to enjoin the board from selecting and appointing any person not recommended by him, alleging that he "was a candidate of one political party and the appellants of another in the election at which they were elected, appellee being the only candidate of his party selected." And he alleges "that if the defendants select persons for any of the positions in the Police and Fire Departments who have not been recommended by plaintiff, this plaintiff will not only be deprived of the prerogatives of his office as Police and Fire Commissioner, but will have fostered upon him a personnel, in part at least, from whom he cannot and will not receive cooperation and harmonious action in carrying on the work of the departments under his jurisdiction; that such a situation would be detrimental to the public welfare and will impede and hamper plaintiff in maintaining efficient Police and Fire Departments."

The effect of the writ granted by the court below is to vest in appellee an unqualified exclusive right to nominate all persons who may be appointed as members of either of the departments involved and that right is made to be a continuing one unlimited as to the time of its exercise. If the writ is to stand, the majority of the members of the board, in the event their judgment does not coincide with that of appellee as to the suitability of a proposed appointee, must either surrender the dictates of their judgment and discretion, conferred upon them by the charter of the city, to his wishes or not make any appointment.

The court below took the view that under the city's charter appellee is entitled to thus control the judgment and actions of the other members of the board, such a view being, as we think, a clearly and obviously erroneous one.

Under the city's charter, the governing body is a board consisting of five members known as the board of commissioners. As originally framed, the charter required (section 12) that there be elected a mayor-president, who should be the mayor of the city and presiding officer of the board, and four commissioners, who after their election should by a majority vote designate from among their members one to be "Police and Fire Commissioner," one to be "Commissioner of Streets and Public Prop-

erty," one to be "Water Works and Sewerage Commissioner," and one to be "Commissioner of Finance and Revenue." As to the police and fire commissioner, it is provided that he "shall have under his special charge the enforcement of all police regulations of such City and general supervision over the fire department thereof." The charter was later amended so as to provide that the office of each commissioner shall be a distinct one and to require that a candidate for election as a commissioner designate the particular office to which he aspires. That amendment (section 5a), however, goes no further and does not undertake to make any changes in or affect the duties of the respective commissioners as originally defined in the charter.

Section 8 of the charter provides: "The said Board of Commissioners shall by a majority vote of all the members thereof have the power to appoint all officers and subordinates in all departments of said City."

Section 19 of the charter provides that the board of commissioners at their first meeting, or so soon thereafter as possible, shall select officers therein specified among whom are a chief of police and a chief of the fire department.

Section 20 empowers the board of commissioners to establish and maintain a police department and a fire department, the officers and members of which are to be appointed as thereinafter provided. The provisions thereinafter made are as follows:

"At the first meeting of said Board of Commissioners, or so soon thereafter as possible, it shall be the duty of the Commissioner who may be selected as Police and Fire Commissioner to prepare and present to the Board of Commissioners in writing his recommendations of persons, both in said police and fire departments, based on the integrity of character and physical and intellectual capacities of the applicants for such positions; and the said Board of Commissioners shall upon receiving such recommendations, select therefrom proper persons to fill such positions in the departments, respectively, as may be by them deemed wise and necessary; and upon the failure or refusal of said Police and Fire Commissioner to present said recommendations at the second regular meeting of the Board it shall thereafter proceed to elect proper persons to fill such positions; Provided, however, that so far

as it may be practicable and consistent with good order, discipline, and improvement of the public service, it shall be the duty of said Police and Fire Commissioner to prefer in recommendations to said Board for appointment to the police and fire departments, respectively, those men who have proved themselves capable, good and efficient in the performance of their duties and the Board shall give due weight to such recommendations."

It will thus be readily seen that while there is placed upon the police and fire commissioner the duty of recommending in writing not later than the second regular meeting of the board persons for appointments in the police and fire departments, there is no provision requiring that the board appoint the persons, or any of them, so recommended, even though all of those thus recommended be in fact qualified for the positions. What is required of the board is that they select from those who have been so recommended "proper persons to fill such positions in the departments as may be by them deemed wise and necessary." That language nowhere requires the appointment of any person recommended just because he may be qualified or may be believed by the board to be so. Those to be appointed by the board are to be "proper persons" who are deemed by the board to be "wise" to appoint. Thus an appointee proposed by the police and fire commissioner may be even in the judgment of the majority of the board members qualified for the position, but they are left free to reject him if in their opinion he is not a proper person whom they deem it wise to appoint.

The freedom of judgment given to the board to make appointments manifestly cannot be fettered or destroyed by the simple expedient of compelling them to make a choice from such number of persons as the police and fire commissioner may recommend for appointment to any particular position.

Counsel for appellants having so well stated further conclusions entertained by us, we here quote therefrom as follows:

"It will be noted that all that appellants are said to have agreed to was to accept some of the persons previously recommended by appellee and reject the others and appoint some persons whose names are not on the list already filed by appellee. It is not alleged that there was any agreement not to consider further rec-

ommendations which appellee might care to make after the action to be taken on his first list, nor that there was any agreement to appoint other persons without first giving to appellee opportunity to make such further recommendations as he might see fit to make, or that there was any agreement in advance not to accept and appoint any persons who might be recommended by appellee in place of those on his first list who might be rejected." The agreement in that respect as alleged is simply to select and appoint "persons for some of the positions in the Police and Fire Departments who have not been recommended by plaintiff and whose names are not shown on the list" previously filed by plaintiff.

Manifestly such an agreement, whether rightfully or wrongfully made, could be the cause of no complaint by appellee unless it deprived or threatened to deprive him of some right which he is given under the charter with reference to the recommendations he is required to make. If we have been correct in heretofore saying that appellee is vested with no right to compel the appointment of those recommended by him, then appellants' agreement to accept some and reject others clearly infringed no right of his. If the agreement as alleged can be construed to be one to proceed immediately after taking the proposed action on appellee's first list to appoint other persons without giving appellee opportunity to make further recommendations, then the right of his, if any, infringed, or threatened to be infringed, would be that of requiring that he be allowed to make and the board compelled to consider and act on such further recommendations as he might care to make. A violation of that right, if there was in fact a contemplated violation, clearly could not enlarge appellee's rights as defined by the charter. He obviously could not have his right to make further recommendations protected by giving him an exclusive right to make all nominations unless he is under the charter empowered with the exclusive and unlimited right to make nominations for positions in the police and fire departments he is not entitled to the writ the court below has given him.

That he has no such right is established by the decision of this court upon the precise question in Perrett v. Wegner, 139 S. W. 984, 988. There the police and fire commissioner failed to nominate any one for chief of police at the first meeting of the board, but at the second meeting nominated Perrett, who was rejected by the board. At the next meeting the police and fire commissioner made another nomination, his nominee being again rejected, and the board elected Wegner upon a nomination made by another commissioner. Perrett, who was the incumbent, refused to surrender the office to Wegner, contending that the latter had not been legally appointed to it because he had not been recommended by the police and fire commissioner. Thus it is apparent that if the police and fire commissioner had the right under the charter such as the court below in this case has held him to have to restrict appointments to positions in the police department to persons recommended by him, Perrett's contention would have been correct. But this court held otherwise. The provisions of the charter before the court and governing the question in that case are the same ones before the court here and governing the question of this case. Construing those provisions, this court held that while the police and fire commissioner is empowered to make nominations up to the termination of the second meeting of the board which he is entitled to have considered and acted on before appointments can be made upon nominations of any other members, nevertheless his exclusive right to so nominate terminates at the expiration of the second meeting. The court said:

"It was certainly not intended by the Legislature in enacting these provisions of the charter that a police commissioner could delay the appointment of a chief of police by making only one recommendation for such appointment at each succeeding meeting of the board, and by so doing either force the board to appoint a person whom it did not regard a proper person for the office, or retain in office indefinitely a chief whom the board regarded unfit for the position. Such a condition would be intolerable, and it was to prevent the possibility of its occurrence that the charter provided that, in event the police commissioner failed to make recommendations at the second meeting from which in the judgment of the board a proper person to fill the position could be elected, the board should proceed to fill the office upon its own motion."

And after calling attention to the provisions of the charter of the city in force just prior to the adoption of this one un-

der which there was no power upon the part of the council, the then governing body of the city, to appoint policemen who had not been recommended by the police board, the court further said:

"This defect in the old charter was most likely in the mind of the framers of the present charter when they placed therein the provisions giving the primary and ultimate power to appoint all city officers to the majority of the board of commissioners and limiting the exclusive exercise of the right given the police commissioner to nominate persons for office in his department to the two first meetings after the election and qualification of the members of the board."

The writ awarded in this case by the court below is manifestly in the very teeth of that decision. It accomplished exactly what the court there said the provisions of the charter were designed to prevent, that is, it requires the majority of the board to accept only such persons as appellee has recommended or may recommend or to leave the incumbents in office by making no appointments.

For the reasons above expressed, the judgment of the trial court is reversed and the temporary injunction granted by such judgment is dissolved.

Reversed and injunction dissolved.