WILLIAM OWENS VS. JOHN W. WITHEE — Appeal from Titus County.

The statute to authorize the settlement of disputes by conciliation or arbitration should be liberally construed; but still, the parties acting under it must substantially pursue its provisions, otherwise the award of the arbitrators cannot be made the judgment of the court. [9 Tex. 44; 16 Tex. 516; 30 Tex. 291.]

Case stated in the opinion of the court.

JOHNSON and GRAY for appellant.

It is only by a strict compliance with the provisions of the statute authorizing the settlement of disputes by arbitration, that parties can avail themselves of its benefits. None of the requirements of the statute have been complied with in this case.

1st. The agreement to arbitrate is defective in not stating the matter in dispute or controversy, or the cause of action.

2d. It does not state who is plaintiff and who is defendant, nor is it signed by the parties as such.

3d. It provides for six instead of two arbitrators.

4th. It prescribes a penalty for the enforcement of the award. The award, therefore, could not be made the judgment of the court under the statute. [Acts 1846, p. 127; Stev. N. P. 47 to 50, inclusive.]

If this be a submission under the common law, the award is defective and could not be enforced, because it is not within the terms of the submission. It was made by five instead of six arbitrators to whom the matter was referred. [6 Johns. 39; 1 Kin. Comp. 62; 2 Tidd's Pr. 827; 3 Black. Com. 16.]

If the award were good as a proceeding under the common law, it could only be enforced by a suit upon the arbitration bond. [3 Black. Com. 16; 2 Tidd's Pr. 820, 708; Stev. N. P. 35; 1 Kin. Comp. 60.]

N. S. GRAY for appellee. No brief filed.

Justice LIPSCOMB delivered the opinion of the court.

It appears that there were two suits pending in the district court between the parties; one for slanderous words in which

11

the appellant was plaintiff, and one to recover damages for a trespass in which the appellee was plaintiff. For the purpose of an amicable adjustment of these difficulties, they entered into the following agreement, to wit:

"THE STATE OF TEXAS, COUNTY OF TITUS.

"An agreement made and entered into between William Owens and John W. Withee, both of the state and county aforesaid, witness: That whereas, there are now pending, and have been for some time past, difficulties between the said Owens and Withee, and the said parties being now engaged in law against each other, and being desirous of settling said difficulties upon amicable terms, have agreed to submit all matters of difficulties to arbitrators, according to the statute in such cases made and provided; and for that purpose have thought proper to choose gentlemen not within seven miles of the town of Mount Pleasant, and accordingly have selected the following as their neighbors and friends to sit on said arbitration; that is to say, James F. Box, John Stewart, Martin Binion, James Rutherford, Chas. Stewart, W. C. Bott, John Stewart, and the said parties agree to abide and obey the decision of said arbitrators, which shall be final, under the penalty of two thousand dollars for the forfeiture of the party failing to comply with said award. In testimony of which, we, the undersigned, subscribe our names and affix our private seals, this 22d day of February, A. D. 1848.

"WILLIAM OWENS, [L. S.]
"J. W. WITHEE,          "
"Attest: R. W. DIXON."

This agreement was filed in the clerk's office, as appears from the following indorsement: "43, 44, John W. Withee vs. William Owens, agreement for arbitration; filed in office February 22, 1848; Friday, 25th day of February, day of trial. Bernard Hill, Clerk."

Afterwards an agreement is filed to substitute John C. Gahagan in the place of Rutherford.

Then follows the award, to wit: "We, the undersigned commissioners selected for the purpose of arbitrating a certain mat-

ter of difficulty between John W. Withee and Wm. Owens, now pending before the judge of the eighth judicial circuit, have had the same under consideration, and come to the following conclusion, to wit: There having been no scandalous language used by the said John W. Withee towards Wm. Owens; consequently there is no slander. And it is further our most solemn conviction, that the said William Owens well and faithfully discharged his duty as clerk during the absence of the said John W. Withee. We find damages to the amount of two hundred dollars in favor of the said Withee, this 25th Feb'y, 1848. Signed, Wm. C. Bott, F'mn, J. C. Gahagan, John Stewart, Martin Binion, C. S. Stewart. Filed in office Feb'y, 1848. Signed, Bernard Hill, Cl'k." Then follows an entry made by the clerk, in which, as a part of the history of the proceedings, he states that the arbitrators were sworn, and that after hearing the witnesses and the argument of counsel, they returned the above award; that an application was made by Owens for a rehearing, and stating several reasons in support of his motion. That he, the clerk, as *presiding officer*, granted the motion, and directed a rehearing of the whole matter according to the statute in such cases made and provided (as he says), though it is believed that there is no statute conferring on him that distinction. He, however, states further, that Withee, the successful party, would have nothing more to do with any further proceedings.

These proceedings, at the succeeding term of the district court, seem to have been taken up on motion, and the award was made the judgment of the court, from which an appeal was taken.

For the appellant, it is contended that the court below erred in making the award of the arbitrators the judgment of the court, for reasons that may be arranged as follows: First. That the proceedings were not in conformity with the statute; and secondly, that, as a common law award, it could not have been made the judgment of the court.

We will consider these objections in the order in which they have been presented.

That the parties intended to follow the provisions of the act of the legislature, entitled "an act to authorize the settlement of disputes by conciliation or arbitration," there can be no doubt, and if the provisions of the act have been substantially followed, the award should not be defeated for mere matter of defect in form. The object of the statute claims for it a liberal construction [see Officiers vs. Dirk, last term]. It must be admitted, however, that, from the structure of the whole act, we are sometimes beset with difficulties in giving it the effect that its framers intended; superadded to this difficulty, in the present case, we have to encounter the bungling manner in which the agreement is framed. The first section of the act provides that all persons consenting to submit any dispute, controversy or right of action, supposed to have accrued to either party, may by an agreement in writing by them signed as *plaintiff* and *defendant*, and filing the same with a justice of the peace — or, if the amount in dispute, and claimed, exceed in value one hundred dollars, with the clerk of the district court — entitle themselves to the benefit and provisions of this act; and the decision of any controversy, dispute or right of action made by the arbitration, according to the provisions of this act, shall be without appeal, unless the right to the same be reserved in the agreement filed as above provided. The 3d section makes it the duty of the justice of the peace, or the clerk (as the case may be), to assign a day for trial, and to issue process for witnesses, as either party may desire. The 4th section provides for choosing, and the qualification of arbitrators. It is that each party shall choose an arbitrator, who shall be over the age of twenty-one years, competent to serve as a juror, not related to either party by consanguinity or affinity, and disinterested in the result of the cause submitted for his decision. The 5th section provides for swearing the arbitrators and witnesses. The 6th section provides for an umpire in case the arbitrators cannot agree. The 7th section provides for giving effect to the award. In case it be before a justice of the peace, he shall file it and issue execution. If with the clerk, he shall file it, and a judgment shall be entered thereon at the first regular term of

the court thereafter. The 8th section provides that, the agreement being filed to arbitrate, it may be pleaded in bar of any suit brought on the same cause of action.

It is difficult to form a clear view of the meaning of many parts of this act. From its general features and many expressions and terms used, I am inclined to the opinion that it was intended to apply to and embrace matters of difference between parties on which suit had not been commenced; this would be in conformity with the practice that formerly prevailed in this country, that, before a party could sue, conciliation had to be offered and refused.

This view, to my mind, acquires strength from the provisions of the 8th section. By it the agreement to arbitrate under this law may be pleaded in bar *to any suit thereafter brought.* If intended to apply to suits already pending, why not allow the agreement to be pleaded in bar of such suits? Then, on the other hand, the parties named in the agreement as plaintiff and defendant would seem to imply that they had already been so designated by a suit pending. These terms may have been intended and used in reference to the party claiming satisfaction, compensation or redress of a supposed wrong, and the party from whom it was sought to be obtained. The parties to the agreement of submission in the case before us, whatever were their wishes and intention, seem to have had a very imperfect knowledge of the plainest provisions of the act, as will be seen by a comparison of the agreement with the law. The law provides for only two arbitrators, unless an umpire should become necessary; they have chosen six. The law provides the mode of enforcing the award. The agreement does not seem to have contemplated that it would be made the judgment of the court, but provides a penalty for the non-performance of either party of what should be required of him by the award.

It seems very clear, therefore, that the proceedings were not in conformity to the statute, and the award could not legally be made the judgment of the court. If the judgment can be sustained at all, it must derive its legality from some other sources;

and as the previous statute on the subject was repealed, it is to the common law alone we must direct our attention.

At common law, the agreement to arbitrate might be verbally, by parol, or by an obligation under seal. If the award was made, it was enforced by an action founded on it, if it was not voluntarily performed. If the party refused to submit the matter in controversy, after agreeing to do so, and revoked his consent, there was no other remedy than by suit for the breach of the agreement to arbitrate. [Black. Com. vol. 2, p. 16; Chitty's Plead. vol. 2, pp. 78, 79.]

It was usual for the parties to give bond under a penalty to abide by the award; in such cases the suit could be founded on the bond. But in no way could the award be made the judgment of the court without the consent of the parties. When a suit was pending, as in the case before us, it was competent for the parties by consent to leave it to arbitrators, and by consent, have the award of such referees made the judgment of the court. In such cases the record showed the consent of parties. In this case no rule of reference was entered, nor was it pretended that it could be made the judgment of the court by any other authority than the act of 1846, cited above. Under the circumstances, it was error to make the award the judgment of the court, because it was bad, both by the statute and the common law. The award was bad on another ground, and could neither at common law or by statute have been made the ground of an action. The award must strictly conform to the agreement, or the power given, and the slightest departure has been ruled to be fatal to its validity. [See illustrations of the rule, 2d Chit. Prac. 105, and cases cited.]

In the case before us the agreement of submission was to six arbitrators, whose names were inserted, and it was afterwards agreed in writing, signed by both parties, that another name should be substituted in the place of one of them. The award is signed by five only of the arbitrators. If it had been intended that five should be sufficient, the agreement should so have expressed it; but the fact of the substitution of one showed a determination that the number six should be kept up according

to the original agreement.   The award returned is not the act and decision of the six chosen for the purpose, and, according to the authorities referred to, was null and void.   [See Miller *vs.* Green, 6 Johns. R. 39.]

If the award had been good at common law, it would have furnished an occasion for settling a point of some importance in our practice.   If the party in whose favor it was made had offered it in evidence as a demand liquidated in his favor, and as having been settled by the arbitrators since the last continuance, it would have been certainly a novelty; but perhaps not altogether free from difficulties, arising from our mixed jurisdiction, whether in some way he would not have had the benefit of his award.   We give no opinion, and these remarks are designed only to elicit investigation when the question arises.

The judgment must be reversed, and the cause remanded, with instructions to the court below to proceed as though agreement had never been made to arbitrate.