GEORGE D. ELMER & others *vs.* COMMISSIONER OF
INSURANCE.

Suffolk.   November 15, 1938. — October 26, 1939.

Present: FIELD, C.J., DONAHUE, QUA, & DOLAN, JJ.

*Insurance Company.   Commissioner of Insurance.   Mandamus.   Words,*
"Shall."

Section 49 of G. L. (Ter. Ed.) c. 175 gives to the commissioner of insur-
ance no power, discretionary or otherwise, to refuse to "endorse his
approval on" articles of organization submitted to him for the pur-
pose of incorporating a mutual insurance company to carry on the
business of accident, liability, collision and health insurance as de-
fined in § 47, Sixth, if all technical requirements of law necessary or
proper for such indorsement have been complied with, although he
is not satisfied as to the personal fitness of the proposed incorporators
to carry on the business.

Discretion of the court should not be exercised to deny a writ of man-
damus directing performance by a public officer of a purely minis-
terial duty required by statute where his only reason for refusing to
do so was that he had "not been satisfied" as to a matter in respect
to which he had no right to make his satisfaction a condition of his
acting.

PETITION, filed in the Supreme Judicial Court for the
county of Suffolk on May 9, 1938, for a writ of mandamus.

The case was reserved and reported by *Lummus*, J.

*W. E. Kopans,* (*E. R. Bonitz & N. Fink* with him,) for
the petitioners.

*R. Clapp,* Assistant Attorney General, for the respondent.

QUA, J.   The ten petitioners have signed an agreement
of association, held a meeting of incorporators, and caused
articles of organization, records, and by-laws to be submitted
to the respondent, all for the purpose of incorporating a
mutual insurance company to carry on the business of acci-
dent, liability, collision and health insurance as defined in
G. L. (Ter. Ed.) c. 175, § 47, Sixth.   This petition is brought
to compel the respondent to "endorse his approval on the
articles" as provided in c. 156, § 11, to which reference

is made in c. 175, § 49. See *Wesalo* v. *Commissioner of Insurance*, 299 Mass. 495.

In his report the single justice says, "It was conceded by the respondent that all the technical requirements of law necessary or proper for the endorsement by the respondent of his approval on the articles of the [*sic*] organization have been complied with." He finds that the respondent has not "given final refusal" to endorse his approval, "but has refused to do so up to the present time because he has not been satisfied that the petitioners are suitable or proper persons to form, conduct, or maintain a mutual casualty insurance company or to act as officers or directors of such a company"; that if the respondent has discretion in the matter "he is exercising it reasonably and in good faith." "On these facts" the single justice reports the case for our determination, adding that if he had discretion as to the granting of the writ he would not grant it.

The fundamental question to be decided is whether upon the submission to the respondent of the prescribed documents, complete and correct in form and showing, as he himself concedes, full compliance with all the requirements of law for the formation of a new company it was the ministerial duty of the respondent to endorse his approval or whether he had power to adjudge the incorporators to be unsuitable and improper persons and to refuse approval on that ground.

An examination of the relevant statutes demonstrates that it was the duty of the respondent to approve the articles, and that he has not been entrusted by the Legislature with any jurisdiction to determine the personal fitness of the incorporators before approving the articles. His powers are only those set forth in the statutes. It is provided by G. L. (Ter. Ed.) c. 175, § 48A, that "Ten or more persons, residents of this commonwealth, may form a mutual company." There are no restrictions as to the persons who may avail themselves of the act, except that they are to be residents of this Commonwealth. When by § 49 provision is made for approval of the articles of organization, it is stated that the commissioner of insurance "shall have the powers and per-

form the duties" which the commissioner of corporations and taxation has and performs with respect to business corporations under G. L. (Ter. Ed.) c. 156, § 11. The section last mentioned provides that if the commissioner finds that the law relative to the organization of a corporation has been complied with "he shall endorse his approval on the articles." "Shall" in a statute is commonly a word of imperative obligation. It is inconsistent with the idea of discretion. *McCarty* v. *Boyden,* 275 Mass. 91, 93. *Opinion of the Justices,* 300 Mass. 591, 593. This is followed in § 12 by the further imperatives that upon the approval and filing of the articles the State secretary "shall" issue a certificate of incorporation and "shall" sign the certificate and cause the great seal of the Commonwealth to be thereto affixed and "shall" cause a record of the certificate of incorporation to be made. This series of commands is designed to furnish a route through which any residents may procure incorporation by complying with general laws equally applicable to all and by demonstrating that compliance to the proper administrative officer. There is no suggestion that either the commissioner or the State secretary may accept some and reject others according to either officer's ideas of personal fitness.

If the commissioner of insurance has power to refuse approval of properly prepared papers because he regards the persons named in them as unfit, it necessarily follows that the commissioner of corporations and taxation has the same power with respect to every proposed business corporation, for both commissioners ultimately derive their powers from the same words of the same section. Moreover, why confine this alleged power of discretion, which is nowhere conferred in words, to the fitness of the persons involved? Why not apply it to all other factors bearing upon the desirability of the proposed incorporation? If these commissioners are to be the final arbiters without appeal of the right of persons to incorporate, why may not the commissioner of insurance determine whether there is not already all the competition that is desirable in certain kinds of insurance, and why may not the commissioner of corporations determine whether

it is in the public interest that any more corporations be formed to manufacture shoes or to carry on the grocery business?

Not only is it extremely unlikely that the Legislature would intend to grant to administrative officers vast bureaucratic powers over the creation of corporations in general without express words carefully defining those powers, directing the manner of their exercise, and guarding against their abuse, but there are positive indications that the Legislature did not intend to grant such powers. Thus by § 32 of c. 175 a domestic company is forbidden to issue policies until it has obtained from the commissioner of insurance a certificate to the effect that it has complied with all provisions of law, that it has adopted a proper system of accounting, employed a competent accountant and a competent and experienced underwriter, and that it is without liabilities, except for the amount paid in for capital stock. See also G. L. (Ter. Ed.) c. 175, § 4, as amended by St. 1938, c. 357, § 1. Before granting a certificate the commissioner is empowered to make examination and to require evidence. Here the matters upon which the commissioner is to pass and the manner in which he may act are set forth in precise detail. It is at this point and in the manner here provided that the judgment of the commissioner is to be exercised. These provisions of § 32 would hardly have been enacted and allowed to stand in their present form if it had been supposed that the commissioner had at an earlier stage a general and unlimited authority to pass upon the desirability of the proposed incorporation. It is to these provisions and many others scattered throughout c. 175 that the public must look for protection and not to any implication in favor of an administrative officer of powers which the Legislature has not seen fit to express. If that protection is inadequate the remedy is not in the courts.

Again, when by St. 1930, c. 136, the incorporation of companies to do the business of life insurance was for the first time made possible under general laws, § 32 of c. 175 was amended so as to require the commissioner of insurance, in the case of a company organized to do a life

insurance business, to satisfy himself, in addition to the matters hereinbefore enumerated, that the company has employed a competent and experienced actuary, "and that its officers and directors are of good repute and competent to manage a life company," and there is a further provision that the commissioner may in his discretion refuse a certificate to a life company, if he is of the opinion that the granting of it "would . . . be prejudicial to the public interest." St. 1930, c. 136, § 2. At the same time § 49 of c. 175 of the General Laws was so amended as to require the commissioner not to approve the articles of organization of a company formed to transact the business of life insurance "until he is satisfied by such examination as he may make and such evidence as he may require, that the incorporators are of good repute and intend in good faith to operate the company." St. 1930, c. 136, § 5. Thus the commissioner was expressly granted as to life insurance companies alone substantially the powers which he now claims to exercise as to the proposed company here involved, which is not a life insurance company. These special provisions applicable only to life insurance companies still exist in G. L. (Ter. Ed.) c. 175, § 32, as amended by St. 1938, c. 357, § 2, and in G. L. (Ter. Ed.) c. 175, § 49, side by side with the former provisions applicable to all companies, thus showing beyond doubt the legislative intent to make and to maintain a distinction between life companies and other companies as to the duty of the commissioner both in approving the articles of organization and in granting a certificate permitting the issuance of policies.

The provisions of G. L. (Ter. Ed.) c. 156, § 11, that upon submission of the papers to the commissioner for his approval he "may require such . . . additional information as he deems necessary" does not imply any power of decision as to the personal fitness of the incorporators. That provision refers to information which the commissioner deems necessary for the purpose of performing the only duty then before him, that is to say, the duty of determining whether the "law relative to the organization of the corporation" has in truth been "complied with." There is

ample scope in that connection for the operation of this clause.

The conclusions here reached are in conformity with what has been said of the duties of the commissioner of corporations and taxation under the closely analogous §§ 16 and 43 of c. 156 in *Mitchell* v. *Mitchell, Woodbury Co.* 263 Mass. 160, at page 164, and in *Cunningham* v. *Commissioner of Banks,* 249 Mass. 401, at page 422.

The Attorney General has not argued in behalf of the respondent that the single justice could refuse the writ on discretionary grounds. Yet whether he could do so on the facts found is one of the questions of law involved in the report. It is commonly stated that the issuance of the writ is discretionary. Nevertheless it has long been recognized that the writ could not be refused arbitrarily or without cause. In *St. Luke's Church* v. *Slack,* 7 Cush. 226, at page 239, it was said that "this is not an arbitrary discretion; it is a judicial discretion; and when there is a right, and the law has established no specific remedy, this writ should not be denied." The matter has been discussed in several more recent cases in which it is recognized that the writ ought not to be refused if the petitioner shows an absolute right and is without other remedy, and where no reason exists for refusing the writ. To deny the writ in such a case is to quarrel with the policy of the law which creates the right. *Peckham* v. *Mayor of Fall River,* 253 Mass. 590, and cases cited. *Cochran* v. *Roemer,* 287 Mass. 500, 502. *McNeil* v. *Mayor & City Council of Peabody,* 297 Mass. 499, 502, and cases cited. *Security Cooperative Bank* v. *Inspector of Buildings of Brockton,* 298 Mass. 5. Some of the reasons which have been held here and elsewhere to justify a discretionary refusal of the writ where the petitioner has otherwise made out a legal right are that to grant it would cause peculiar hardship or injustice; that it would be detrimental to the public interest; that it would violate the spirit of the law; that it would operate disastrously upon the rights of third parties; that it would be ineffective; and that there has been unreasonable delay. No attempt is made to exhaust the list. In the

case at bar on the facts found there is no reason for denying the writ, unless it be that the respondent "has not been satisfied" as to a matter in respect to which he has no right to make his satisfaction a condition of his approval of the articles. Under the circumstances of this case a peremptory writ of mandamus should issue as prayed for.

*So ordered.*