Dr. C. W. PAYTON, Appellant,

v.

The HURST EYE, EAR, NOSE & THROAT HOSPITAL AND CLINIC et al., Appellees.

No. 7076.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 28, 1958.

Rehearing Denied Nov. 25, 1958.

Henry T. Atkinson, L. F. Burke, Longview, for appellant.

Kenley, Sharp, Ritter & Boyland, Will C. Hurst, Longview, Thompson, Coe & Cousins, Dallas, for appellees.

FANNING, Justice.

This is an appeal from a temporary injunction. The Hurst Eye, Ear, Nose & Throat Hospital and Clinic, a charitable corporation, and Genevieve Hurst, individually and as Independent Executrix of the Estate of V. R. Hurst, Deceased, on May 17, 1958, filed suit as plaintiffs in cause No. 30,277–B in the District Court of Gregg County, 124th Judicial District of Texas, against Dr. C. W. Payton as defendant, alleging in effect: That the said corporation clinic owned a certain hospital with certain clinic equipment, supplies and optical records in Longview, Texas; that defendant, Dr. C. W. Payton, was formerly employed by the clinic but that such employment was terminated by the plaintiff corporation on May 17, 1958; that defendant Payton was asserting a claim to an interest in alleged good-will, records and equipment of the clinic of the corporation and was also asserting some character of claim to the right of purchasing the alleged good-will, records and equipment of the clinic; plaintiffs further alleging that defendant had no interest in alleged good-will, records and equipment belonging to plaintiffs and had no interest in or ownership of any of the equipment, supplies and records located in the building of the clinic, that in the past Dr. Payton had taken in his possession certain of said records, or had copied same, and that plaintiffs feared that defendant would take and destroy said records which records had a value in excess of $500; and further alleging that defend-

ant Payton "is and will be a trespasser on the premises of the Clinic having no lease, or right to lease and that his presence on the premises of Plaintiff will constitute and constitutes an unwarranted interference in the business of the hospital and the affairs of the Plaintiff corporation; that Defendant shall have no right to the use of the name, location or records belonging to Plaintiffs. Plaintiff Clinic alleges that the Defendant has certain checks or monies in his possession belonging to the Corporation and that he is indebted to the Corporation in a sum in excess of $500.00 and the Corporation requests a full accounting."

Plaintiff Genevieve Hurst also alleged that all of the records and good-will were owned by Dr. V. R. Hurst during his lifetime and that the clinic never owned any part thereof and that the clinic had no authority or power to sell or otherwise dispose of any good-will owned by Dr. V. R. Hurst at the time of his death; that Dr. Hurst died December 7, 1957, leaving a written will which had been admitted to probate with Genevieve Hurst the duly qualified and acting Independent Executrix of said estate, with the said Genevieve Hurst owning a community one-half interest in said records and good-will of Dr. V. R. Hurst. Plaintiff Genevieve Hurst further alleged upon information and belief that the defendant was threatening to and would use the name of Dr. V. R. Hurst in the practice of medicine in Longview, Gregg County, Texas, and that he had no right to use such name. Plaintiffs further alleged in effect that they had no other adequate remedy at law, that irreparable harm and injury would result to them unless a restraining order be entered enjoining the defendant from the various acts and things set out in detail in their power. On May 17, 1958, the trial court (Hon. Sam B. Hall, Judge of the 71st Judicial District of Texas, sitting in the 124th Judicial District Court by virtue of an exchange of benches between him and Hon. David Moore, Judge of said 124th Judicial District Court) entered a temporary re-straining order outlining in detail the various acts and things Dr. Payton was temporarily restrained from doing, until a hearing on the temporary injunction set for hearing on May 26, 1958.

Defendant Dr. C. W. Payton on May 19, 1958, presented to the trial court his petition to dissolve the said temporary restraining order and requested a hearing on the matter for May 22, 1958. The trial court re-set the hearing on the temporary injunction for May 22, 1958. Defendant in his motion to dissolve denied all and singular the allegations in plaintiffs' petition and among other things pleaded in effect that the injunction suit in cause No. 30,277–B should be abated because there was a prior suit pending in the District Court of Gregg County, Texas, 124th Judicial District of Texas under No. 30,102–B, styled Dr. C. W. Payton vs. Mrs. Genevieve Hurst, et al., file date, March 10, 1958, which suit defendant alleged was to determine the rights between Dr. Payton and Mrs. Genevieve Hurst, individually and as independent executrix of the estate of Dr. V. R. Hurst, deceased, and also the Hurst Eye, Ear, Nose & Throat Hospital and Clinic, et al., growing out of a contract and agreement dated June 17, 1955, signed by Dr. V. R. Hurst in behalf of the corporation clinic and Dr. Payton, with defendant alleging his construction of the terms of said contract, and alleging that the two suits in question involved the same subject-matter and that the later suit for injunction should be abated.

The contract in question was introduced in evidence by plaintiffs at the hearing on May 22, 1958. Defendant also introduced in evidence at said May 22nd hearing the pleadings and proceedings in cause No. 30,102–B. Other evidence was also heard by the trial court.

On May 22, 1958, after a hearing on the temporary injunction, the trial court entered an order granting a temporary injunction against Dr. Payton, hereinafter more particularly referred to, which order

was filed May 23, 1958. On May 23, 1958, defendant's attorneys of record filed a request with the trial court for findings of fact and conclusions of law. The trial court did not file formal findings of fact and conclusions of law in a separate instrument, but on May 26, 1958 (which order was filed on May 27, 1958), did enter an amended order granting a temporary injunction against Dr. Payton, hereinafter more particularly referred to, which contained detailed findings and conclusions. The injunction bond mentioned in the amended order was duly made and duly approved.

Defendant, Dr. C. W. Payton, has appealed.

The record shows that plaintiff clinic is a non-profit charitable corporation with active officers and directors, operating a hospital in Longview, Texas, owning a three-story building which has premises leased to Dr. W. B. Norman, space devoted to an eye clinic, optical shop separate from the eye clinic, and a hospital set up serving both Dr. Norman and Dr. Irving Stolzar, lessees of said corporation, with Dr. Norman and Dr. Stolzar, operating independently of the corporation, employing their own help, charging and collecting their own fees, and purchasing their own supplies. Dr. V. R. Hurst, who had been medical director of the corporation since the organization of same, died on December 7, 1957.

Dr. Hurst (allegedly and ostensibly on behalf of the corporation—with this matter being in dispute between the parties with appellant also pleading estoppel on the part of the corporation to deny the authority of Dr. Hurst to execute the contract on behalf of the corporation) executed the contract in question with Dr. Payton.[1]

1. "The State of Texas ⎱
"County of Gregg ⎰

"This Contract and Agreement entered into this 17th day of June, A.D., 1955, by and between the Hurst Eye, Ear, Nose & Throat Clinic, a corporation, acting by and through Dr. V. R. Hurst as Business Manager, and known as Party of The First Part, and Dr. C. W. Payton, herein known as Party of The Second Part, both of Gregg County, Texas,

"Witnesseth

"Party of the First Part desires to continue the services of the Party of the Second Part, and does hereby agree that a Contract will be made with Dr. ——— Williams, providing that similar provisions will be incorporated as that made in Contract dated September 1, 1953, with Dr. Hayter, to which reference is here made for the contents therein.

"That if and when Party of Second Part buys the good-will and equipment as successor to said Clinic the Party of the Second Part will have the same or similar protection as in said Contract.

"Party of the Second Part is to receive One Thousand Dollars ($1000.) increase over the present salary each year beginning January 1, 1956 if the collections remain the same, based on the period from January 1, 1955, to July 1, 1955, or twenty-five (25) percent of the increase in gross income (before any doctors' salaries, but after other expenses such as office salaries, are adjusted, whichever is greater.)

For the year 1956 there will be an additional One Thousand Dollars ($1000.) if there has been as much as $4000 increase in collections, making Twenty Thousand Dollars ($20,000) per year salary. With each year, if the Party of the Second Part remains with the Clinic, he will accumulate a five percent (5%) interest in the good-will value, which value will be determined by an Advisory or Arbitration Board herein mentioned, and this is to be determined from the information gathered from the operations of other similar clinics.

There will be no decrease in income to Party of the Second Part on the first five percent (5%) of decrease in collections. On any decrease in collections above five percent (5%) the adjustment will be made in proportion to the above increase.

Upon the complete retirement or permanent disability or death of Dr. V. R. Hurst, the Directors, or Trustees, will follow one of the following plans:

(a) Work out plans with Party of the Second Part for the continuation of the Corporation.

(b) Submit to the Advisory Board to determine the value of equipment, records and good-will to be purchased by the Party of the Second Part on a simi-

After the death of Dr. Hurst, defendant Dr. C. W. Payton continued as an employee of the corporation and was paid a salary as an employee until he was discharged on May 17, 1958. On May 9, 1958, the Board of Directors of the corporation passed the following resolution:

"1. Be it Resolved that Hurst Eye, Ear, Nose and Throat Hospital-Clinic, a Texas non-profit corporation recognizes that under the Laws of the State of Texas, it cannot engage in the practice of medicine and that as of May 17, 1958, it is not engaging in the practice of medicine and that no undertaking, agreement or action of the Board of Directors will be done or instituted which could or might be interpreted as engaging the said corporation in the practice of medicine.

"2. Resolved that the Vice President and Medical Director is hereby directed to notify Dr. C. W. Payton that as of May 17, 1958, his employment is terminated, and that Dr. Payton be directed to vacate his office in the Hurst Eye, Ear, Nose and Throat Hospital-Clinic in Longview, Texas and take none of the records, files or other property owned by the said Hospital-Clinic Corporation. Vice Presi-

dent and Medical Director is directed to inform Dr. C. W. Payton that he is not to practice medicine in the clinic in any manner except that he may continue to treat patients who are at the time of his discharge patients in the hospital portion of corporation building if that treatment be necessary to the well-being of each of said patients."

On May 17, 1958, Dr. Payton was given his termination notice and was paid a salary for the full month of May, 1958. On May 16, 1958, the appellee corporation, by duly executed and recorded written lease, leased the space in its hospital building occupied by the eye department to Dr. I. H. Stolzar for a term of five years for the sum of $805.87 per month.

Dr. Stolzar took possession of these premises under the terms of the lease and in his testimony in the temporary injunction hearing Dr. Stolzar described the acts of Dr. C. W. Payton in interfering with his possession of the leased premises and described the confusion resulting from Dr. Payton's acts in violation of the temporary restraining order previously served on Dr. Payton.

Dr. V. R. Hurst sold his records and good-will relating to his ear, nose and

lar arrangement as that made with Dr. Norman, with the values to be determined by several factors, length of time of lease on the building, etc.

(c) In the event that the health of the Party of the Second Part should become so impaired that he will be unable to carry on and perform the duties in connection with the terms of this Contract, the same is to be adjusted by the Advisory Board.

(d) The Advisory Board, or Arbitration Board, is to be appointed in the usual manner by the Party of the First Part naming one person, and the Party of the Second Part to name another person, and these two to appoint a third member to which the parteis hereto agree to be bound by their findings.

Witness our hands at Longview, Texas, in duplicate, this the 17th day of June, A. D. 1955.

"/s/ B. W. Sunkel
"Witness

"/s/ B. W. Sunkel
"Witness

Hurst Eye, Ear, Nose & Throat Clinic

By V. R. Hurst
V. R. Hurst, Business Manager
Party of First Part.
C. W. Payton, M. D.
Party of Second Part."

(Here follows acknowledgment of C. W. Payton).

throat practice to Dr. W. B. Norman on March 2, 1955. The appellee clinic was not involved in this except to the extent that Norman had to obtain a lease from appellee clinic before the sale was valid. Appellee Genevieve Hurst, individually and as executrix, sold the eye records and good-will (practice) of Dr. V. R. Hurst, deceased, to Dr. I. H. Stolzar, by written instrument dated May 16, 1958.

Appellant herein, Dr. C. W. Payton, contends that the trial court's temporary injunction in the case at bar disturbed the status quo. We disagree with appellant's said contention.

In Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549, 553, it is stated:

"The 'status quo' to be preserved by temporary injunction is 'the last, actual, peaceable, noncontested status which preceded the pending controversy.' Hartley v. Brady, Tex.Civ. App., 114 S.W.2d 406, 408; Dickard v. Crawley, Tex.Civ.App., 230 S.W.2d 833, 834."

In Pena v. LeComte, Tex.Civ.App., 35 S.W.2d 252, it was held that where the appellant in said case had a permissive right of travel over land which the appellees owners elected to discontinue and where said appellant had no title to the land, that the effort of said appellant to preserve the *alleged status quo* in traveling over the appellees owners' land was not well taken in that the true status quo was the uninterrupted ownership in the land by the owners, and the injunction sought by said appellant was denied.

■ The contract in question between the clinic corporation and Dr. Payton clearly did not vest any title in Dr. Payton to the building or property of the clinic corporation and did not give Dr. Payton any right to lease the building from the corporation and did not give Dr. Payton any non-revocable possessory rights to the corporation's building or property and the only

right he had to any temporary use or occupancy of the clinic's building or property was his right as a salaried employee subordinate to the uninterrupted ownership and possession of his employer, which right as an employee to use and occupy the building and property of his employer was terminated when Dr. Payton was discharged by the corporation. We think the true status quo was the uninterrupted ownership and dominant possession of the hospital and property in question by appellees and that appellant as a discharged employee with no title to or right to possession of the hospital and property in question, and being a trespasser with respect to appellees' property, could not assert a status quo with himself as an owner, or as a tenant or as an employee entitled to possession.

■ Appellant contends that the trial court erred in overruling his plea in abatement. We construe Dr. Payton's suit in cause No. 30,102–B as being a suit for specific performance of the contract in question, and in the alternative for monetary damages. It clearly appears to us that the only claim Dr. Payton could have would be under the contract in question which gives an indefinite right to purchase equipment, records and good-will of appellee hospital under the common law arbitration clauses set out in the contract. The record shows that no arbitration proceedings had been had. Dr. Payton in his cause No. 30,102–B asserted a refusal by appellees to arbitrate and sought to compel them to arbitrate, and in the alternative sought monetary damages. Under the common law and well-settled case law of this state, appellant could not compel an arbitration under the facts in this case and is relegated to a suit for damages for any breach of the arbitration clauses. 4 Tex.Jur. 673; Owens v. Withee, 3 Tex. 161; Texas Development Co. v. McGough Bros., 5 Cir., 165 F.2d 276. In Owens v. Withee, supra (3 Tex. 161) it is stated:

"At common law, the agreement to arbitrate might be verbally, by parol,

or by an obligation under seal. If the award was made, it was enforced by an action founded on it, if it was not voluntarily performed. If the party refused to submit the matter in controversy, after agreeing to do so, and revoked his consent, there was no other remedy than by suit for the breach of the agreement to arbitrate. Black. Com. Vol. 2, p. 16; Chitty's Plead. Vol. 2, pp. 78, 79."

Since Dr. Payton could not compel specific performance of the contract in question in cause No. 30,102–B, he would be relegated in said cause to a suit for monetary damages. We construe said cause No. 30,102–B as being a different character of suit from the injunction suit brought by appellees in cause No. 30,277–B to restrain Dr. Payton from trespassing upon the hospital premises and interfering with appellees' property, and from doing the other acts complained of, in view of the fact that Dr. Payton had no title to the hospital premises and property of appellees and that his former permissive right to occupy the premises of his employer had been terminated by the employer hospital's discharge of the employee Payton. We hold that the trial court correctly overruled the plea in abatement. In this connection, see the case of Houston Oil Co. of Texas v. Village Mills Co., 109 Tex. 169, 202 S.W. 725.

Appellant contends that the temporary injunction of May 22, 1958, did not set forth the reasons for its issuance in compliance with Rule 683, Texas Rules of Civil Procedure, and that the trial court erred in granting the amended order of May 26th because Dr. Payton was not given notice of it and that a hearing thereon in open court was not had.

The record does not show that any formal written notice to amend the order was served upon Dr. Payton. The parties are not in accord as to whether actual notice was given to one of Dr. Payton's attorneys prior to the filing of the amended order and as to what transpired with reference to the securing and entry of the amended order and their respective statements in their briefs dealing with these matters which are outside of the record will not be further noted here. However, the record does show that on May 23, 1958, appellant filed a request with the trial court to make findings of fact and conclusions of law.

The order of May 22, 1958 (which was filed May 23, 1958) did not state detailed reasons for the granting of the temporary injunction, stating in this connection as follows: " * * * it appearing that the Plaintiffs are entitled to the temporary injunction as herein granted, same being within Plaintiff's allegations and prayer and that defendant's Motion to Dissolve the Temporary Restraining Order and plea in abatement should be in all things overruled and denied; * * *" The decretal portion of the order, however, is very specific and is the same as the decretal portion of the amended order. The amended order states detailed reasons for the granting of the temporary injunction[2] and the

---

2.  "Order
No. 30,277–B

| | |
|---|---|
| The Hurst Eye, Ear, Nose and Throat Hospital and Clinic VS. C. W. Payton | In the District Court Of Gregg County, Texas. |

---

On the 22nd day of May, A. D. 1958, came on for hearing the application of The Hurst Eye, Ear, Nose and Throat Hospital and Clinic and Genevieve Hurst, Independent Executrix of Estate of V. R. Hurst, Deceased, Plaintiffs for a temporary injunction after due notice to the Defendant, C. W. Payton, as directed by Sam B. Hall, District Judge, the Plaintiffs and the Defendants having ap-

decretal portion of the amended order is very specific.[3]

In Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549, 553, supra, it is further stated:

"* * * We interpret the Rule (referring to Rule 683, T.R.C.P.) to require in this respect only that the

peared in person and by their attorneys and the Court having considered said verified petition, affidavits submitted by the parties, the answer of the Defendant, the evidence and argument of counsel and it appearing that the Plaintiffs are entitled to the temporary injunction as herein granted, same being within Plaintiffs' allegations and prayer because Dr. C. W. Payton is a trespasser on the premises of Plaintiff at 315 North Center Street, Longview, Texas and his presence on said premises and his attempt to continue the practice of medicine thereon after Plaintiff Corporation has ceased the practice of medicine to comply with the law of the State of Texas; and after said C. W. Payton has been discharged as an employee of the Corporation constitutes a trespass and interference in the affairs and business of a charitable Corporation; that no adequate remedy at law exists to which Plaintiff might resort, and that Dr. C. W. Payton not being shown to be able to respond in damages, and that irreparable injury will result to Plaintiffs; that the status quo should be preserved with Plaintiff Corporation continuing in control and operation of the premises at 315 North Center Street, Longview, Texas being the Hospital and Clinic Building located thereon; that the asserted cause of action by Defendant against Plaintiffs appears to be a suit in which damages only could be recovered and in which the Courts could not decree specific performance; and that therefore Defendants has no valid interest or claim on the equipment, records or goodwill or building of the Plaintiffs and should be restrained from using or coming upon the premises of Plaintiff Corporation or interfering with its agents or employees or lessees in order to protect the status quo and to grant equitable relief where none exists at law, and where trespass and irreparable injury is threatened to Plaintiffs, by interference with Dr. Irwin H. Stolzar, lessee of Plaintiff, as to a portion of Plaintiffs

order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reason why the court believes the applicant's probable right will be endangered if the writ does not issue. *If the party enjoined wishes detailed findings of fact and conclusions of law he may seek*

premises at a rental of $805.87 per month, and that therefore Defendant's Motion to Dissolve the Temporary Restraining Order and plea in abatement should be in all things overruled and denied;" * * *

3. "It is Accordingly Ordered, Adjudged and Decreed that the Clerk of this Court issue a writ of injunction pending final hearing and determination of this cause in restraining and enjoining C. W. Payton and his agents or employees from coming about or using the premises at 315 North Center Street, Longview, Texas and from practicing medicine at The Hurst Eye, Ear, Nose and Throat Hospital and Clinic except as to surgical patients under treatment in the hospital whose well-being requires further and immediate treatment, from sending out statements, collecting monies for work done at Plaintiff Clinic, from using the name 'Hurst' in any manner and from using, removing or copying any records on the premises of Plaintiff Clinic at 315 North Center Street, Longview, Texas or from interfering, molesting or contacting the Lessees, agents, servants or employees of the Plaintiffs, provided that Plaintiffs shall, prior to the issuance of such writ of injunction, file with the Clerk bond executed by them in the amount of Twenty-five Thousand and No/100 ($25,000.00) Dollars, payable to the Defendant with two or more good and sufficient sureties approved and conditioned as the law requires, to which action of the Court the Defendant then and there excepted and gave notice of appeal to the Court of Civil Appeals for the Sixth Supreme Judicial District at Texarkana, Texas.

Entered this 26 day of May, 1958, in amendment and modification of judgment granting temporary injunction dated May 23, 1958.

Sam B. Hall
District Judge, Gregg County, Texas.

Filed May 27, 1958."

*them under the provisions of Rules 296 and 385(e)."* (Interpolation and emphasis ours.)

We deem it unnecessary to determine whether the order of May 22 was sufficient to comply with Rule 683, T.R.C.P., for if said order of May 22 was insufficient in the above regard, it is our considered judgment that the record in this case affirmatively shows that no harm to appellant resulted therefrom. In this connection see the following cases: Transport Co. of Texas v. Robertson Transports, supra; Garcia v. Sun Oil Co., Tex.Civ.App., 300 S.W.2d 724, wr. ref., n. r. e. Rothermel v. Goodrich, Tex.Civ.App., 292 S.W.2d 882; Gonzales v. Rodriguez, Tex.Civ.App., 250 S.W.2d 253. Also as hereinafter held and outlined, the order of May 22, 1958, was superseded by a valid order of May 26, 1958, which fully and sufficiently disclosed the reasons for granting the temporary injunction which fully complied with Rule 683, T.R.C.P.

Rule 317, T.R.C.P., reads as follows:

"Where in the record of any judgment or decree of a court, there shall be any omission or mistake, miscalculation or misrecital of a sum or sums of money, or of any name or names, if there is among the records of the cause any verdict or instrument of writing whereby such judgment or decree may be safely amended, it shall be corrected by the court, wherein such judgment or decree was rendered, or by the judge thereof in vacation, upon application of either party, according to the truth and justice of the case. The opposite party shall have reasonable notice of the application for such amendment."

It is well settled Texas law that after rendition of a "final" judgment, the trial court retains for a limited time an inherent power to set aside, modify, or amend the same without the necessity of a formal written or oral motion by a party, or for reasons not incorporated in a motion duly filed. See numerous authorities cited in 4 McDonald, Texas Civil Practice, Sec. 1803, pp. 1420, 21 and 22, and we quote from said authority as follows:

*"After rendition of a 'final' judgment, the trial court retains for a limited time an inherent power to set aside, modify or amend the same without the necessity of a formal written or oral motion by a party, or for reasons not incorporated in a motion duly filed. * * * a district court governed by Rule 330 retains such power until (but not after) 'the expiration of thirty days after the date of judgment or after a motion for new trial is overruled,' regardless of the expiration of a term of court during such period. Until his power expires, the court 'may, on his own motion or on the motion of either party, with or without good reason, vacate, modify, correct or reform the same or grant a new trial according to the justice of the case.'* The time fixed for filing a motion for new trial restricts the rights of the parties to seek such relief, but does not limit the inherent power of the court to act without such a motion. The only limit upon the power within the period is jurisdictional: at the time of the vacation or amendment of the judgment the court must still have jurisdiction of the parties and the subject matter. *Notice to the parties and an opportunity to be heard upon the proposed action is not essential, though as a matter of courtesy both should be afforded where possible."* (Emphasis ours.)

The decretal portions of the judgment of May 22, 1958, and the amended judgment of May 26, 1958, are the same. The only difference in the judgments is that the amended judgment recites in detail the reasons for the granting of the temporary injunction. When the appellant filed his request for findings of fact and conclusions of law we think it entitled the trial court to make findings of fact and conclusions of law in the amended judgment of May

26, 1958, and that such amended judgment can be logically construed to be in response to appellant's request for findings of fact and conclusions of law. We are supported in this view by the case of Stahl v. Westerman, Tex.Civ.App., 250 S.W.2d 325, 326, opinion by Justice Norvell, wherein it is stated:

"Trial was to the court without a jury. Request was made for findings of fact and conclusions of law. These were filed, but, instead of being incorporated in a separate instrument as is the preferable practice under the Texas Rules of Civil Procedure, *such findings and conclusions were set forth as recitations in the judgment appealed from. We shall treat these recitations as findings and conclusions filed in accordance with* Rule 296."

Under Rule 385, T.R.C.P., it is not mandatory for a trial court to file findings of fact and conclusions of law in appeals from interlocutory orders but same is permissible if such findings and conclusions are filed so as not to delay the filing of the record in the appellate court. Neither Rule 296, T.R.C.P. nor Rule 385, T.R.C.P., specifically requires that the trial court's findings of fact and conclusions of law must be formally filed as a separate instrument although this would be the preferable practice as stated by Justice Norvell in Stahl v. Westerman, supra. It is our considered view that the trial court was fully authorized to amend the judgment in question by incorporating therein his specific findings of fact and conclusions of law in the manner in which he did in view of the request of appellant for findings of fact and conclusions of law, and that this reason alone was sufficient to sustain the trial court's amendment of. the judgment under this record.

Furthermore, we do not think Rule 317, T.R.C.P., is applicable to the decree in this case. There was no omission or mistake in the decretal portion of the order of May 22nd,—it was the same as the decretal portion of the order of May 26th. The omission in the first order of May 22nd was in connection with the court's brief general findings and conclusions which precede the decretal portions of the order—with the brief general findings and conclusions of the order of May 22nd being amplified in the detailed specific findings and conclusions of the order of May 26th, with no change in the decretal portions of the May 26th order. Also, the action of the trial court was within the inherent power of the court to amend his judgment on his own motion while his court still retained jurisdiction, his court being governed by Rule 330, T.R.C.P., and the amendment was made during the time he was given plenary control of his judgment under said Rule 330, and this power could be exercised without notice and without a hearing in open court as stated by 4 McDonald, Texas Civil Practice, Sec. 1803, pp. 1421–22, supra, as follows:

"*Notice to parties and an opportunity to be heard upon the proposed action is not essential though as a matter of courtesy both should be afforded where possible.*" (Emphasis ours.)

Furthermore, as hereinbefore held, the action of the trial court in amending the order in question in the manner in which he did was clearly in response to appellant's request for findings of fact and conclusions of law.

Appellant also in his brief makes various comments with respect to the fact that Judge Sam B. Hall, Judge of the 71st Judicial District Court of Texas (which district is composed of Gregg and Harrison Counties) heard the injunction suit (cause No. 30,277-B) when the specific performance and damage suit (No. 30,102-B) was pending before Judge David Moore, Judge of the 124th Judicial District of Texas, which district comprises Gregg County, Texas. We see nothing unusual in this procedure as the record shows that on

May 5, 1958, Judges Hall and Moore entered a proper order for the exchanges of benches.

We have carefully reviewed the evidence as well as the entire record in this case and are of the opinion that the trial court did not abuse his discretion in granting the temporary injunction.

Appellant's remaining points and contentions have been carefully considered, none of them are deemed as constituting reversible error under the record in this case and same are respectfully overruled.

The judgment of the trial court is affirmed.

CHADICK, Chief Justice (concurs).

I think the trial court's judgment should be affirmed and I concur therein.

DAVIS, Justice.

I dissent. This was originally written to be the opinion of this Court, and same is filed, with minor changes and additions, as my dissent herein.

Prior to June 15, 1955, Dr. C. W. Payton was employed by the Hurst Eye, Ear, Nose & Throat Clinic, hereinafter referred to as the Clinic, at 315 North Center Street in the City of Longview, Gregg County, Texas.

On June 17, 1955, Dr. V. R. Hurst as business manager of the Clinic, entered into a contract with Dr. Payton wherein and whereby Dr. Payton contends that he was granted the right to purchase the good-will and equipment of said Clinic, together with a 5% interest in the good-will value of said business, and to lease a part of the Clinic. Dr. Hurst died December 7, 1957. Differences arose as to the rights of the parties soon thereafter. On March 13, 1958, Dr. Payton filed suit in the 124th Judicial District Court of Gregg County against the Clinic and Mrs. Genevieve Hurst, Independent Executrix of the Estate of V. R. Hurst, Deceased, for specific performance of the contract; and, in the alternative, for damages, the case being numbered 30,102–B upon the civil docket of said court.

On March 12, 1958, Dr. Payton presented his petition to Judge Moore, Judge of the 124th Judicial District Court, who issues his fiat ordering a hearing on the petition of Dr. Payton to be held on April 28, 1958, and directing the Clinic and Mrs. Hurst to show cause why injunction should not be issued and receiver should not be appointed as prayed for in said petition.

On May 17, 1958, the Clinic and Mrs. Hurst filed a separate suit against Dr. Payton in the same court, numbered 30,-277–B, for an injunction seeking to enjoin Dr. Payton from going upon the Clinic premises, etc. The petition was presented to Judge Sam B. Hall, Judge of the 71st Judicial District Court, which judicial district includes Gregg and Harrison Counties.

There is no showing that the hearing was held on Dr. Payton's petition on April 28, 1958, or that such hearing was re-set.

There appears in the record an exchange of benches between Judge Sam B. Hall, Judge of the 71st Judicial District, composed of Gregg and Harrison Counties, and Judge David Moore, Judge of the 124th Judicial District, composed of Gregg County only. The exchange of benches is dated May 5, 1958. Mrs. Hurst and the Clinic presented their petition for temporary restraining order to Judge Hall of the 71st District Court and he, apparently acting under the exchange of benches, granted a temporary restraining order, operative until a hearing upon their request for a temporary injunction could be had, restraining and enjoining Dr. Payton or his agents "from coming about or using the premises, etc. * * *"

To the petition of Mrs. Hurst and the Clinic filed in said cause No. 30,277–B, Dr. Payton filed a plea in abatement and motion to dissolve the temporary restraining order. On May 22, 1958, a hearing was held and Dr. Payton's plea in abatement and motion to dissolve were overruled and a temporary injunction was granted which was to the same effect as the restraining order. The order dated May 22, 1958, overruling the plea in abatement, motion to dissolve and granting a temporary injunction did not state any reason for the granting of the temporary injunction.

Dr. Payton excepted to the order and gave notice of appeal. On May 23, 1958, Dr. Payton filed his motion for findings of fact and conclusions of law.

A second order overruling Dr. Payton's plea in abatement and motion to dissolve the temporary restraining order, and granting a temporary injunction, appears in the transcript. The second order is dated May 22, 1958, states reasons for granting the temporary injunction, and immediately above the signature of Judge Hall, appears the following paragraph:

"Entered this 26 day of May, 1958, in amendment and modification of judgment granting temporary injunction dated May 23, 1958."

I note here that there is nothing at all in the record to indicate that any order was made on May *23rd*. There can be no amendment of an order that does not exist.

Dr. Payton has perfected his appeal and brings forward seven points of error. By Point 1 he complains of the action of the trial court in granting the amended and modified temporary injunction dated May 26, 1958, without any notice to Dr. C. W. Payton and not in open court. It is not denied that the purported amended order was made and signed by Judge Hall in chambers at Marshall, Texas, *and without any notice to Dr. Payton whatever.*

Rule 317, Vernon's Ann.T.R.C.P., prescribed the procedure to follow to amend or correct a judgment or decree. The Rule reads as follows:

"Where in the record of any judgment or decree of a court, there shall be any omission or mistake, miscalculation or misrecital of a sum or sums of money, or of any name or names, if there is among the records of the cause any verdict or instrument of writing whereby such judgment or decree may be safely amended, it shall be corrected by the court, wherein such judgment or decree was rendered, or by the judge thereof in vacation, upon application of either party, according to the truth and justice of the case. *The opposite party shall have reasonable notice of the application for such amendment.*" (Emphasis added.)

The notice required in the above rule is mandatory. The word "shall" as used in the rule is used as a word of imperative obligation and inconsistent with any idea of discretion. Elmer v. Commissioner of Insurance, 304 Mass. 194, 23 N.E.2d 95; Baer v. Gore, 79 W.Va. 50, 90 S.E. 530, L.R.A. 1817B, 723; Steinbrunner v. Love, 113 Mont. 466, 129 P.2d 101; Seiner v. Powells Valley Hardware Co., 168 Tenn. 99, 75 S.W.2d 406; Moyer v. Kelley, Tex. Civ.App., 93 S.W.2d 502, wr. dis.

The quotation cited by the majority from 4 McDonald, Tex.Civ.Prac., 1420–1–2, Sec. 18.03 that " * * * Notice to the parties and an opportunity to be heard upon the proposed action is not essential * * " is in direct conflict with Rule 317, supra, and the authorities next above cited.

In the course of many conferences in the decision of this case, the power of the court to set aside, modify, or amend its judgment, order or decree *before they become final,* on its own motion, has been discussed at length and given considerable consideration. It is not contended that the courts do not have such authority. Rule

317, supra; 25 Tex.Jur. 520, Sec. 127, and authorities therein cited. But, the question here is: "Can such be done *without any notice* to the party adversely affected?" The answer is "No!" Here, we have an original judgment that could not be enforced against appellant because it did not recite any reason for granting the injunction as required by Rule 683; yet, the amended judgment, (assuming that it was an amendment of the May *22nd* judgment) recites reasons for granting the same and might be enforced. The so-called amended judgment being entered without any notice or the presence of appellant or his attorney, presents a serious question of whether or not "notice of appeal" from the amended judgment was actually given as recited therein. That fact is mentioned for the purpose of making this very pertinent observation: If a trial judge can amend such judgment by inserting therein the reasons for granting the same, he could just as legally omit the notice of appeal therefrom and the party adversely affected would be completely cut off from getting his case reviewed. The courts of this state will never tolerate such practice.

The amended judgment was signed before appellant or his attorney had any form of notice whatever of the entry of such amended judgment. Appellant was the adverse party, and was injured by having an invalid judgment made a valid judgment. Rules 316 and 317 both require notice to the party adversely affected. See also 25 Tex.Jur. 536, Sec. 142, which reads as follows:

"Sec. 142. Motion. The rule seems to be that a motion to amend or correct a judgment may be had in the trial court by any litigant. Indeed, power to make the record speak the truth being inherent, if a court is made aware that through mistake or omission the record *does not recite the judgment actually rendered,* it is not only the right but the duty of the court, *of its own motion* and After Due *Notice,* to order the proper entry. Or the correction may be made an application of any person interested, although such person was not a party to the suit." (Emphasis added.)

It seems from logical reasoning that if a person is entitled to notice of an amendment so as to make the judgment recite the judgment actually rendered such person would be entitled to notice of an amendment to make a judgment recite the findings and reasons given for granting such temporary injunction at the time the judgment was actually rendered. There is not anything in this record that shows, or would indicate that the trial judge made the findings or gave the reasons recited in the amended judgment at the time it was pronounced and rendered. If the trial court did not announce such findings and reasons at the time of the pronouncement and rendition of judgment, then, such failure was a "judicial error" and could not be corrected on his own motion. 25 Tex. Jur. 527–8, Sec. 133, and authorities therein cited; Hamilton v. Hamilton, Tex.Civ. App., 292 S.W.2d 674, no wr. hist.; 30 Am.Jur. 875, Sec. 109. The trial court is limited to the substitution of the judgment that should have been given on the facts found, and *can not substitute new findings* and new judgment. 49 C.J.S. Judgments § 243, p. 456; Jones v. Clover, 24 Cal.App.2d 210, 75 P.2d 517.

Appellees rely upon the case of O'Daniel v. Libal, Tex.Civ.App., 196 S.W.2d 211, 215, n. w. h., as a "white horse" case that they contend supports the action of the trial court in amending the judgment without notice. This was a temporary injunction suit and the original judgment did not recite the reasons for granting the same, but the amended judgment did. Although, the court held that there was only one reason alleged in the petition and some 20 witnesses testified on that issue, the appellant undoubtedly knew the reasons the injunction was granted without their being stated therein; yet, the court went on to say " * * *. if we are in error

in this respect, we are of the opinion that the court corrected such error, if any, when *after proper notice and hearing,* he entered the following order:" (Emphasis added.) Then follows an amended order, copied in the opinion of the court, that recites the reason for granting the same. And also recites that the original judgment " * * * does not therein correctly refer to nor show *the pronouncement of the Court* in deciding the case as aforesaid * * *" It will be noted there is no writ history on this case. The court cited no authority in support of its holding on the sufficiency of the original judgment and the holding has not been cited in support of any subsequent decision.

The reason for granting the temporary injunction having been pronounced at the time the judgment was rendered, the case is authority for the court to amend such judgment *after proper notice* and hearing. Point 1 should be sustained.

By Point 3, Dr. Payton complains of the action of the trial court in overruling his plea in abatement. The pendency of the suit by Dr. Payton in cause No. 30,102–B against the same parties and involving the identical subject-matter was fully proved. An examination of the pleadings reveals that the two suits involve identical parties and subject-matter. Even though a suit by the Clinic was filed in the same court, it was presented to a different judge of a different court whose jurisdiction included Gregg County, I am unable to understand why the suit was so filed and presented; there being no showing in the record why the petition for temporary restraining order was not presented to Judge Moore in the first place, or why the temporary restraining order when granted by Judge Hall was not made returnable to Judge Moore. Judge Moore had acquired jurisdiction over the parties and subject-matter and this jurisdiction cannot be defeated by merely presenting a matter to a visiting judge on exchange of benches.

The question has arisen in this Court relative to "consolidation of actions" filed in the same court. There could be some feasibility to the theory if the same judge was acting in both suits. But no party to litigation should be relegated to the discretion of two judges presiding in the same court at the same time over the same parties and the same subject-matter whose discretions may be totally repugnant to one another. One can easily visualize two such judges zealously guarding their respective actions in a case and each keeping an eye on the other like two mad Brahma bulls peeping at each other through a new plank gate.

With two judges acting, the cases must be treated as being filed in separate courts of the same jurisdiction. Whether the cases should be considered as being in separate courts, it is still necessary to pass on the question of whether or not the court erred in overruling appellant's plea in abatement. One test, which is usually employed, is whether a final judgment or decree in the prior action would be conclusive between the parties and operate as a bar to the second action; or, in other words, whether a final judgment or decree in the prior action, pleaded in abatement, would support a plea of res judicata of the issues involved in the second action. 1 C.J.S. Abatement and Revival § 42b, p. 69. If appellant should prevail in his prior suit, it would be a complete bar to the relief sought by the appellees in the second suit and the court erred in overruling the plea in abatement. Bridges v. Consolidated Steel Corp. Ltd., Tex.Civ.App., 196 S.W.2d 552, wr. ref., n. r. e.

As a matter of law, the order of Judge Hall in the subsequent suit is void. Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063; Conn v. Campbell, Tex.Com.App., 119 Tex. 82, 24 S.W.2d 813, opinion approved by the Supreme Court. See also Ex parte Lillard, Tex., 314 S.W.2d 800, and Benson v. Fulmore, Tex.Com.App., 269 S.W. 71, opinion approved by Supreme Court.

The fact that the same relief might be obtained by cross-action in a prior suit is, as a rule, no ground for abating a second action for such relief. This rule is applicable, however, only where the relief which a defendant may obtain by cross-action is not a part of the subject-matter of the prior suit but is independent thereof; and where the affirmative relief to which a defendant is entitled is a part and parcel of the cause of action, and the proof which would defeat plaintiff would entitle defendant to his affirmative relief, the latter must obtain it in the first suit and may not bring a separate suit therefor. 1 C.J.S. Abatement and Revival, § 43c, p. 74. Appellees' action is a part and parcel of appellant's suit. The evidence necessary to defeat appellant's prior suit would entitle appellees to the relief they seek in their subsequent suit. Therefore, the plea in abatement should be sustained.

By Points 2, 4, 5 and 7, appellant complains of the action of the trial court in granting the temporary restraining order and the temporary injunction, and refusing to dissolve same. In view of the holdings of the Supreme Court *of Texas* in the cases of Cleveland v. Ward, supra, Benson v. Fulmore, supra, Conn v. Campbell, supra, and Ex parte Lillard, supra, the points should be sustained.

The temporary injunction granted by Judge Hall not only gave the appellees all the relief they seek on a final trial, it in effect disposes of all the issues raised in both suits. It is the well-established law of this state that a temporary injunction, either prohibitory, or mandatory, or in part prohibitory and in part mandatory will not issue when the temporary injunction grants all the relief prayed for on final hearing. The only relief asked by appellees on final hearing is that the temporary injunction be made final; and, the judgment of the trial court and of the majority of this Court is in direct conflict with the following cases on this point: Morgan v. Smart, Tex.Civ.App., 88 S.W.2d 769, n. w. h.; Texas Co. v. Watkins, Tex. Civ.App., 82 S.W.2d 1079, n. w. h.; City of University Park v. Rahl, Tex.Civ.App., 36 S.W.2d 1075, wr. dis.; Cleere v. Wise, Tex.Civ.App., 153 S.W.2d 311, n. w. h.; Perrett v. Wegner, Tex.Civ.App., 139 S. W. 984, n. w. h.; Lewis Ice & Cold Storage Co. v. Gibbons, Tex.Civ.App., 40 S.W. 2d 959, n. w. h.; Ort v. Bowden, Tex.Civ. App., 148 S.W. 1145, n. w. h.; City of Dallas v. Patti, Tex.Civ.App., 286 S.W.2d 664, wr. ref., n. r. e.; Barton v. Tharp, Tex. Civ.App., 27 S.W.2d 885, n. w. h.; Welsh v. Carter, Tex.Civ.App., 30 S.W.2d 354, n. w. h.

Since there was a prior action pending and the judgment in this case conflicts with the prior action, the temporary injunction in this case is void 24–A Tex. Jur. 196, Sec. 116.

The judgment of the trial court should be reversed, the temporary injunction dissolved, and the cause abated and remanded to the trial court with instructions to retain it suspended upon the docket until cause No. 30,102–B is determined, and thereupon to proceed in accordance with the final result of that suit. Haney v. Temple Trust Co., Tex.Civ.App., 55 S.W.2d 891, wr. dism.; North Texas Coach Co. v. Morten, Tex.Civ.App., 92 S.W.2d 263, no wr. hist.