JANUS FILMS, INC., Appellant,

v.

CITY OF FORT WORTH et al., Appellees.

No. 16304.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 26, 1962.

Rehearing Denied March 2, 1962.

Tobolowsky, Hartt, Schlinger & Blalock, and Grover Hartt, Jr., Dallas, for appellant.

S. G. Johndroe, Jr., City Atty., and Fred M. Sullivan, Asst. City Atty., Fort Worth, for appellees.

BOYD, Justice.

Janus Films, Inc., appeals from a judgment denying its petition for a temporary injunction against the City of Fort Worth, members of the Censor Board of such city, and members of the Board of Referees.

We quote from appellant's brief: "Appellant, owning the national distribution rights of the motion picture 'The Virgin Spring', had licensed this picture to the Capri Theatre in Fort Worth. The management of that theatre was denied a permit to exhibit the picture unless the 'rape scene' was removed from the film. On an appeal from the Censor Board to a Board of Review created by the Fort Worth Ordinance, Appellant entered the administrative proceedings to protect its rights as owner of the film. From an order of the Board of Review refusing a permit to show the picture, the Appellant brings this suit seeking a temporary injunction (1) restraining and enjoining the Appellees from interfering with the exhibition of the picture in Fort Worth, (2) restraining the Appellees from applying capricious and private standards of taste or judgment in deciding whether to grant a license for the exhibition of a motion picture in the City of Fort Worth, and (3) restraining Appellees from judging a picture by any standard other than the determination of whether to the average person, applying contemporary community standards the dominant theme of the material taken as a whole appeals to the prurient interest."

In its verified petition appellant alleged that the picture was produced in Sweden, imported into the United States, and distributed in this country through channels of interstate commerce; that the picture had received the award of the Academy of Motion Picture Arts and Science as the best foreign picture for the year 1960.

The city's Ordinance No. 2475 provides that no person shall present to the public an exhibition of any picture of any character by means of moving picture films,

or give or present to the public any other form of theatrical entertainment within the corporate limits of the City of Fort Worth without securing and holding a permit for such exhibition from the Board of Censors for the City of Fort Worth. A violation of the ordinance would subject the person to a fine not exceeding $200.00; each day and each time the ordinance is violated constitutes a separate offense.

The ordinance provides that no permit shall issue for the exhibition of motion pictures (or other forms of entertainment) which are, in the opinion of the Board of Censors, indecent or injurious to the morals of the citizens of Fort Worth, or which would tend to promote or encourage indecency, immorality, or racial or sectional prejudice, or juvenile delinquency.

Appellant contends that the City cannot restrict or inhibit the showing of the picture because of the terms of Article 527, Vernon's Ann. Penal Code, the pertinent parts being as follows:

"Whoever shall knowingly * * * exhibit any * * * motion picture film * * * which is obscene, * * * shall be fined * * *.

"For purposes of this article the word 'obscene' is defined as whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests. Provided, further, for the purpose of this article, the term 'contemporary community standards' shall in no case involve a territory or geographic area less than the State of Texas. * * *

"The provisions of this Act shall not apply to any motion pictures produced or manufactured as commercial motion pictures which (1) have the seal under the Production Code of the Motion Picture Association of America, Inc.; or (2) legally move in interstate commerce under Federal Law; or (3) are legally imported from foreign countries into the United States and have been passed by a Customs Office of the United States Government at any port of entry.

"The provisions of this Act shall not apply to any daily or weekly newspaper."

■■■ We do not think that Article 527 is applicable to the situation here. The City's powers do not derive from any legislative act but from Article 11, Section 5, of the State Constitution, Vernon's Ann.St. It is a home rule city, and its charter powers are plenary, subject of course to the limitation that its charter and ordinances shall contain nothing inconsistent with the State and Federal Constitutions or the general laws enacted by the Legislature. City of Fort Worth v. McDonald, Tex.Civ.App., 293 S.W.2d 256.

There is not available to us all the evidence which was before the trial court. The Judge of that court saw the entire film at a theatre in Dallas. Appellant introduced advertisements and reviews. Some stills are in the record, as well as the testimony of witnesses who saw the show. "This, as to be expected," to quote from the dissenting opinion in Empire Pictures Distributing Co. v. City of Fort Worth, 5 Cir., 273 F.2d 529, "was about as revealing as program notes to a symphony concert."

Appellant agrees that obscenity is not a protected form of speech or press. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. But it insists that the Board of Censors, in judging whether the picture is obscene, used standards other than the determination of whether "to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest," this being the test laid down in Roth v. United States, supra.

It is difficult if not impossible to judge the standard of taste used by the Board of Censors except by judging the kind of film for which the Board refused to issue a permit. If the show in question is obscene according to the test laid down in Roth, it

cannot be said that the Board used the wrong standard.

■ Since obscenity is not a protected form of speech or press, and accepting the definition of obscenity laid down in the Roth case, a question for the trial court was whether to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to the prurient interest. We think this exact question is not before this court. Before we may reverse the judgment it must appear that the film is not obscene according to the Roth test. We cannot say that the trial court erred in failing to so hold when evidence available to, and which doubtless was considered by, that court is not available to us

The judgment of the court was that the application for injunction be denied. There were no separate findings of fact or conclusions of law. No judgment shall be reversed on appeal unless there was error amounting to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rules 434 and 503, Texas Rules of Civil Procedure.

■ One prayer for relief was that the court declare that the ordinance is unconstitutional and violates the rights of free communication "unless the sole standard for the refusal of a license be on the determination that the picture is obscene and that in determining the question of obscenity the only valid test is: 'Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest.'" The ordinance does not employ the word "obscene"; but "indecent" is synonymous with "obscene". Webster's New International Dictionary. In the dissenting opinion in Empire Pictures Distributing Co. v. City of Fort Worth, 5 Cir., 273 F.2d 529, where the same ordinance was under consideration, from which appellant quotes in its brief, it was said:

"This leaves only material which, in the opinion of the Board, is 'indecent' or that which would tend to 'promote or encourage indecency.' And as to this it is further limited as the parties and the court below concede that the ordinance term 'indecent' is synonymous with 'obscene.'" In appellant's brief it is said: "It would not be difficult to prove that motion pictures depicting the sex act, together with various forms of perversion, would offend the standard of every community throughout the State." We cannot say from this record that the "Rape Scene," which we have not viewed, is not indecent and is not obscene.

In our determination of the appeal we do not consider how far a court should go in restraining the enforcement of municipal penal ordinances.

We have considered all of appellant's points and think that reversible error is not reflected.

The judgment is affirmed.