**INTERSTATE CIRCUIT, INC., et al.,**
**Appellants,**

v.

**CITY OF DALLAS, Appellee.**

No. 16773.

Court of Civil Appeals of Texas.

Dallas.

April 5, 1966.

Rehearing Denied April 25, 1966.

Carrington, Johnson & Stephens, Paul Carrington, Dan McElroy, Robert H. Mow, Jr., Tobolowsky, Hartt, Schlinger & Blalock, Grover Hartt, Jr., and Edwin Tobolowsky, Dallas, for appellants.

N. Alex Bickley, City Atty., Ted P. Mac-Master, Pat Stacy and Jerry Williamson, Asst. City Attys., Dallas, for appellee.

DIXON, Chief Justice.

On February 14, 1966 the City of Dallas, appellee, filed suit against Interstate Circuit, Inc., appellant, an exhibitor of commercial motion pictures, seeking temporary and permanent injunctions restraining said appellant (1) from exhibiting the film "Viva Maria" without advertising the film as "not suitable for young persons" and (2) from violating Ordinance No. 11284, as amended, by exhibiting any film contrary to the provisions of the Ordinance.

On February 16, 1966 United Artists Corporation, asserting that it is a distributor of motion pictures and is the exclusive owner of distribution rights of the film "Viva Maria", intervened in opposition to the City.

On February 18, 1966, following a hearing begun the day before, the court granted the City's prayer for a temporary injunction. The City had offered to try the case on its merits at the same time, that is, try the whole case on February 18, 1966, including the application for permanent injunction. This offer was declined by appellants.

Ordinance No. 11284 known as the "Motion Picture Classification Ordinance" was passed by the City Council of the City of Dallas on November 22, 1965. It is too long to be copied here in its entirety. A summary of its material provisions will be found in a footnote hereto.*

* The provisions of the ordinance which are material to this controversy may be summarized as follows:
*Sec. 46A–1. Definition of Terms:*
(d) A young person is defined as being any person who has not attained his sixteenth birthday.
(f) The standards to be applied in determining whether films shall be classified as "not suitable for young persons are:
"(1) Describing or portraying brutality, criminal violence or depravity in such a manner as to be, in the judgment of the Board, likely to incite or encourage crime or delinquency on the part of young persons; or

"(2) Describing or portraying nudity beyond the customary limits of candor in the community, or sexual promiscuity or extramarital or abnormal sexual relations in such a manner as to be, in the judgment of the Board, likely to incite or encourage delinquency or sexual promiscuity on the part of young persons or to appeal to their prurient interest.
"A film shall be considered 'likely to incite or encourage' crime delinquency or sexual promiscuity on the part of young persons, if, in the judgment of the Board, there is a substantial probability that it will create the impression on young persons that such conduct is profitable, desirable, acceptable, respectable, praise-

The Ordinance itself has already been the subject of court action. A number of motion picture exhibitors filed suit in the United States District Court for the

worthy or commonly accepted. A film shall be considered as appealing to 'prurient interest' of young persons, if in the judgment of the Board, its calculated or dominant effect on young persons is substantially to arouse sexual desire. In determining whether a film is 'not suitable for young persons', the Board shall consider the film as a whole, rather than isolated portions, and shall determine whether its harmful effects outweigh artistic or educational values such film may have for young persons."

*Sec. 46A-2. Establishment of Board:*

This section provides for the creation of the Dallas Motion Picture Classification Board.

*Sec. 46A-3. Classification Procedure:*

(a) Before exhibiting a film the exhibitor shall file a proposed classification of the film together with a resume of the plot and other information. If the Board approves the exhibitor's proposed classification it shall file its approval. If the Board fails either to file an approved classification or to hold a hearing within five days, the exhibitor's proposed classification shall be considered approved.

(b) If the Board is not satisfied with the exhibitor's proposed classification, it may request an exhibition of the film before the Board at the earliest time practicable with due regard to the availability of the film. At the screening before the Board the exhibitor may appear, make such statements and present such evidence as he may desire. The Board shall file its classification within two days after such screening.

(c) Any initial or subsequent exhibitor may file an application for a change in classification. If the prior classification should be changed to "not suitable for young persons" the exhibitor shall have seven days in which to alter his advertising and audience policy.

(d) The Board shall notify all exhibitors of its classification order.

(e) The classification shall be binding on any subsequent exhibitor unless a change in classification is made.

*Sec. 46A-4. Offenses:*

(a) It shall be unlawful for an exhibitor (1) to exhibit a film which has not been classified; (2) and (3) to exhibit any film classified "not suitable for young persons" under sixteen years of age unless advertising and display media state that the picture is so classified; (4) and (5) knowingly to sell or give to a young person a ticket to a film classified "un-

suitable for young persons", or knowingly to permit a young person to view such film.

(d) It shall be a valid defense to any prosecution or other proceeding under the Ordinance that the young person was accompanied by his parent, legal guardian, husband or wife.

*Sec. 46A-5. License:*

Every exhibitor holding a general motion picture license shall be entitled to issuance of a license to exhibit films classified "not suitable for young persons."

*Sec. 46A-6. Revocation or Suspension of License:*

Upon complaint being filed that any exhibitor has repeatedly violated the provisions of the Ordinance or has persistently failed to use reasonable diligence to determine whether those seeking admittance to the exhibition of a classified film, the City Council may after notice and hearing suspend for one year the exhibitor's license for the showing of classified pictures.

*Sec. 46A-7. Judicial Review:*

(a) Within two days after filing of the classification by the Board, any exhibitor may file a notice of nonacceptance. If the Board desires to contest the exhibitor's nonacceptance, it shall:

(1) Make application in court within three days for a temporary and permanent injunction.

(2) Have application for temporary injunction set for hearing within five days. If the exhibitor waives notice pursuant to rules of procedure and requests a hearing on the merits on the day set for the hearing on the temporary injunction, the Board shall be required to waive its application for temporary injunction and shall join in such request.

(3) In the event the exhibitor appeals the City shall reply to appellant's brief within five days.

(4) Same in substance as Paragraph (3) if application for writ is made to Supreme Court of Texas by exhibitor.

(5) If trial court denies the Board's application for injunction and Board appeals, Board shall be required to waive all periods of time allowed it by Texas Rules of Civil Procedure, file motion for new trial only if required and then within two days; shall not amend its motion and shall obtain a hearing within five days. Board shall perfect appeal to Court of Civil Appeals including filing of Transcript, Statement of Facts and brief within ten

Northern District of Texas seeking an injunction on the ground that the Ordinance itself is violative of the First and Fourteenth Amendments to the Constitution of the United States. On December 23, 1965 Honorable Sarah T. Hughes, judge of that court, held in effect that, though Section 46A–6 of the Ordinance is unconstitutional, the rest of the Ordinance is not violative of the Constitution. Interstate Circuit, Inc. v. City of Dallas, D.C., 249 F.Supp. 19. Appended to the opinion is Appendix A—a reproduction in full of the Ordinance. The above judgment is now pending on appeal before the United States Court of Appeals.

In the appeal now before us Section 46A–6 is not involved. No violation of that section is alleged. The City has not undertaken to suspend appellants' license and doe not seek to do so. Therefore, we shall not pass on the constitutionality of Section 46A–6, which under the terms of Section 46A–11 may be treated as severable from the rest of the Ordinance.

The two appellants have filed separate briefs. Interstate Circuit, Inc. in its first six points on appeal, and United Artists Corporation in all of its ten points, assert that the Ordinance and its application in this case are violative of the First and Fourteenth Amendments to the Constitution of the United States and of Article 1, Sections 8 and 19 of the Constitution of the State of Texas, Vernon's Ann.St. We do not agree with appellants.

Of course Article 1, Sections 8 and 19 of the Constitution of the State of Texas does not override the Constitution of the United States. Therefore, we shall in the main confine our discussion to the latter Constitution and interpretations thereof, especially with reference to civil suits since this suit does not involve a criminal action, as did the case of Malone v. State of Texas, 170 Tex.Cr.R. 231, 339 S.W.2d 666.

This is not a totally suppressive ordinance, or one that would totally deny the exhibition to anyone of the picture "Viva Maria" or any other classified film. It does not in any way prohibit the exhibition of any classified picture to adults. It does not even prohibit the exhibition of the picture to any child under the age of sixteen years if accompanied by parent, guardian, husband or wife. It does not prohibit exhibitors from exhibiting pictures classified "not suitable for young persons". It does not prohibit distributors from distributing a picture so classified. It is in the nature of a classification ordinance, the purpose of which is to regulate the exhibition of classified pictures to children.

■ By providing for such regulation the Ordinance does not contravene the freedom of speech provisions of our Constitutions. The Supreme Court of the United States has itself suggested that such regulation is proper. We quote from the opinion in Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793:

"We recognize the legitimate and indeed exigent interest of States and localities throughout the Nation in preventing the dissemination of material *deemed harmful to children*. But that interest does not justify a total suppression of such material, the effect of which would be to 'reduce the adult population * * * *to reading only what is fit for children.'* Butler v. Michigan, 352 U.S. 380, 383,

---

days and shall then file a motion requesting the Court of Civil Appeals to advance the submission of the appeal.

(6) If the Court of Civil Appeals reverses the trial court's injunction order, or if the court refuses to reverse the order, provisions are made similar to those outlined in Paragraph (5) above for the hearing of and decision by the Supreme Court of Texas.

*Sec. 46A–10. Exception to State Law:*
Nothing in Ordinance shall be construed to regulate public exhibitions pre-empted by Article 527 of Texas Penal Code.
*Sec. 46A–11. Severability Clause:*
Should any section of the Ordinance be held invalid such holding shall not render invalid any other section, the various sections, etc. being deemed severable for this purpose.

77 S.Ct. 524, 526, 1 L.Ed.2d 412, 414. State and local authorities might well consider whether their objectives in this area would be better served by laws aimed specifically at preventing distribution of objectionable material to children, rather than at totally prohibiting its dissemination." (Emphasis supplied.)

See also Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645, and People v. Walton, 70 Cal.App. 2d Supp. 862, 161 P.2d 498.

■ Freedom of speech, mighty bulwark that it is in the preservation of our liberties, is not an absolute right—a truth that is recognized by court decisions. Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031; and Times Film Corp. v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403. We do not believe that our forefathers in adopting our constitutional provisions or that subsequent interpreters thereof intended to require of children the same discretion, the same mature judgment, or the same responsibility in sex matters that we do of adults. Freedom of speech does not include the right to teach children that sexual promiscuity is to be approved and accepted as a standard of conduct. And to so hold is not merely to embrace a contemporary local community standard as appellants contend. It involves a contemporary national standard.

This Ordinance avoids constitutional infirmity though it provides for a prior submission of a film under some circumstances. Times Film Corp. v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403. The process under the terms of the Ordinance takes place under procedural safeguards which require that (1) the burden of proving that the film is not protected rests on the City; (2) the exhibitor is assured by the Ordinance and authoritative judicial construction that within a specified brief period of time the City will either issue a permit or go to court to obtain a regulated showing of the film; (3) any restraint in advance of final adjudication must be for the shortest period of time compatible with sound judicial resolution; and (4) the procedure must assure a prompt final judicial decision. These are the tests laid down by the Supreme Court of the United States in Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 in a *total censorship case*.

The Texas Rules of Civil Procedure grant powers to courts to make prompt judicial decisions. In the district courts Rule 245(c) provides that actions may be placed on the trial calendar "in such other manner as the courts deem expedient" and Rule 330(b), applicable to Dallas courts, provides that "the court may set any case for trial at any time so as to allow the parties reasonable time for preparation."

In the appellate courts Rule 410, after listing certain types of cases which shall have precedence in Courts of Civil Appeals then states in Section (f): "Such other cases as the court, by order or rule, may direct." Rule 497 provides that "Causes may be tried in such order as the justices of the Supreme Court may deem to the best interest and convenience of the parties or their attorneys."

■ The case now before us was filed in the trial court February 14, 1966, tried February 18, 1966, submitted to this court March 28, 1966 and decided April 5, 1966. Appellants surely have no real basis to complain that the judicial procedural time table has been inadequate to meet the requirements set out in the Freedman case.

■ Appellants complain that the Ordinance leaves too much to the judgment and discretion of the Board. Appellants apparently overlook the fact that this case was not tried in the district court under the "substantial evidence rule", which requires a court to approve an administrative agency's decision if there is any substantial evidence to support it. This was a *"de novo"* trial in which the court was free to make and obviously did make its own independent

findings regardless of the findings or judgment of the Board.

■ Appellants say that the Ordinance is invalid because it provides standards for the judgment which are too broad, vague, uncertain and indefinite to permit of enforcement or to give fair notice of the type of films which may be subject to classification. We see no such infirmity in the Ordinance. In Subsection (f) of Section 46A-1 the Ordinance sets definite standards for classification. Absolute precision is not required. What is required and what we think the Ordinance affords is a sufficiently definite warning of the standards which are to guide the Board and the courts in classifying films. As was said in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, at page 1312, 1 L.Ed.2d 1498, at page 1510,

"Many decisions have recognized that these terms of obscenity statutes are not precise. *This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process.* '* * * The Constitution does not require impossible standards'; all that is required is that the language 'convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.' United States v. Petrillo, 332 U.S. 1, 7, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877, 1883. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '* * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous * *' " (Emphasis ours.)

■ Appellants further say the Ordinance is invalid because it involves a contemporary community standard of a local community only, the City of Dallas, and not the State of Texas or the United States. Again we cannot agree with appellants. To regulate to a limited extent the portrayal to children under the age of sixteen years of sexual promiscuity as acceptable is not to apply merely a local community standard. It is to apply a contemporary national standard.

Appellants contend that to support the validity of the Ordinance or any action taken under its terms the City must prove that a film classified "not suitable for young persons" must pass three tests. We quote from the brief of the distributor, appellant United Artists Corporation:

"1. It must deal with sex in a manner appealing to the prurient interest, judged by the average person, applying contemporary community standards, and considering its dominant theme as a whole. Roth v. United States, 344 [354] U.S. 476 [77 S.Ct. 1304] 1 L.Ed.2d 1498 (1957); and, 2. It must be patently offensive—so offensive on its face as to affront community standards of decency. Manual Enterprises, Inc. v. Day, 370 U.S. 478, [82 S.Ct. 1432] 8 L.Ed.2d 639 (1962); and, 3. It must be utterly without redeeming value; hence, the good may not be weighed against the bad. Jacobellis v. [State of] Ohio, 378 U.S. 184 [84 S.Ct. 1676], 12 L.Ed.2d 793 (1964)."

We bow to the pronouncements of the Supreme Court of the United States. But we do not believe that the holdings above set out are applicable here. In all of the cited cases the court was considering enactments which sought to impose total censorship. Their effect would have been to ban completely the sale, distribution or exhibiting of the matter involved either to adults or children. The Ordinance we have before us for consideration in this case does no such thing. As we have already pointed out it does not call for total censorship in any instance. It simply applies limited regulations of the conditions under which cer-

tain classified pictures may be exhibited to children under the age of sixteen years.

If we be in error in the above holding we nevertheless hold that the Ordinance and its application in this case do not violate the constitutional provisions. We have read the evidence reproduced in the statement of facts and viewed the film "Viva Maria". The latter was exhibited for our benefit in the court room. The evidence amply supports the implied findings of the Board and the district court that the film offends in all of the particulars named under the three headings quoted in the foregoing excerpt from appellant's brief.

If the three tests are to be applied in this case we think test No. 1 should be modified so that in place of the words "judged by the average person" there should be substituted the words "judged by the average *young person*"—meaning a person under the age of sixteen years. However, we would make the same holding if test No. 1 were not so modified.

In the case of John Cleland's "Memoirs of a Woman of Pleasure" v. Attorney General of the Commonwealth of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 decided March 21, 1966, the Supreme Court of the United States reversed a judgment of a Massachusetts court banning the above named book. The court said, "A book can not be proscribed unless it is found to be utterly without redeeming social value." But the court then went on to say:

"It does not necessarily follow from this reversal that a determination that 'Memoirs' is obscene * * * would be improper under all circumstances. On the premise, which we have no occasion to assess, that 'Memoirs' has the requisite prurient appeal and is patently offensive, *but has only a minimum of social value*, the circumstances of production, sale, and publicity are relevant in determining whether or not the publication and distribution of the book is constitutionally protected." (Emphasis supplied.)

We hold that "Viva Maria" has only a minimum of social value, if any at all, as to children under the age of sixteen years. And since it is permitted to be exhibited subject only to limited regulations, it is not constitutionally protected from the terms of the Ordinance which the City seeks to apply or from the terms of the temporary injunction granted by the trial court.

■ Appellant United Artists Corporation, distributor, asserts that it has the same constitutional rights as the exhibitor, yet it is not mentioned in the Ordinance and was not notified of the hearings. There is no merit to this contention. United Artists Corporation does not claim that it is an exhibitor of this or any other picture. It is a distributor and there is nothing in the Ordinance to prevent distribution of the film. The Ordinance has to do with the exhibition of the film to children, not its distribution. Besides, United Artists Corporation intervened in the lawsuit and was given full opportunity to be heard. It has not been harmed.

We overrule the first six points on appeal of appellant Interstate Circuit, Inc. and all ten points of appellant United Artists Corporation.

■ In its seventh point appellant Interstate Circuit says that under Article 527 of the Vernon's Ann. Texas Penal Code the State pre-empted to regulation of motion pictures, so that a municipality may not enter the field. In its eighth to sixteenth points, inclusive, appellant complains of the action of the court in overruling exceptions to appellee's pleadings. In its seventeenth point appellant objects to the court's failure to set forth reasons to justify the granting of the temporary injunction. In its eighteenth and nineteenth points appellant alleges that the temporary injunction was not supported by pleadings and the court misapplied the law. We have considered all these additional points and find no merit in them. They are overruled.

Justice Bateman has written a concurring opinion in which he presents his views somewhat in detail. I have read his concurring opinion and agree with his views as stated by him.

The judgment of the trial court is

Affirmed.

WILLIAMS, J., not sitting.

BATEMAN, Justice (concurring).

I concur fully with everything written by my Brother Dixon in his opinion and would like to enlarge somewhat on several of the decisions contained therein.

By its seventh point of error on appeal the appellant Interstate Circuit, Inc. says the court erred in refusing to hold that Article 527 of the Texas Penal Code preempted the field of regulating motion pictures, thus making invalid such attempted action by the City. The first two sections of Article 527, Penal Code of Texas, as amended in 1961, prohibit the doing of certain things, including the exhibition of obscene motion pictures, but Section 5 provides, in part, as follows:

"The provisions of this Act shall not apply to any motion pictures produced or manufactured as commercial motion pictures which (1) have the seal under the Production Code of the Motion Picture Association of America, Inc.; or (2) legally move in interstate commerce under Federal Law; or (3) are legally imported from foreign countries into the United States and have been passed by a Customs Office of the United States Government at any port of entry."

The evidence clearly shows that the film in question is what is known as a "commercial motion picture" and that it has moved, and will probably continue to move, in interstate commerce. We think we can safely assume that such movements in interstate commerce will be "legal." Therefore, this motion picture, being one of a class specifically excepted from the effect of Article 527, is subject to regulation by the City.

Moreover, the City of Dallas, being a home rule city deriving its powers from Article 11, Section 5 of the Texas Constitution, has plenary charter powers which include the power to enact the ordinance here in question, its powers being subject only to the limitation that its charter and ordinances shall contain nothing inconsistent with the Texas and Federal Constitutions or the general laws enacted by the State Legislature. City of Fort Worth v. McDonald, Tex.Civ.App., 293 S.W.2d 256, wr. ref. n. r. e.; Janus Films, Inc. v. City of Fort Worth, Tex.Civ.App., 354 S.W.2d 597, wr. ref. n. r. e. per curiam, 163 Tex. 616, 358 S.W.2d 589. Home rule cities have full authority to do anything the Legislature could have authorized them to do prior to adoption of the Home-Rule Amendment, the result being that it is not necessary to look to the acts of the Legislature for grants of power to such cities, but only for limitations on their powers. Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282, 286; Yellow Cab Transit Co. v. Tuck, Tex.Civ. App., 115 S.W.2d 455, wr. ref.

Appellants take the position that in the light of certain pronouncements by the Supreme Court the picture "Viva Maria" is entitled to protection under the First and Fourteenth Amendments to the United States Constitution and Article 1, Section 8 of the Texas Constitution unless it can be properly said that it is obscene; and that in determining whether it is obscene three tests must be applied, to wit:

"1. It must deal with sex in a manner appealing to the prurient interest, judged by the average person, applying contemporary community standards, and considering its dominant theme as a whole. Roth v. United States, 344 [354] U.S. 476 [77 S.Ct. 1304], 1 L.Ed.2d 1498 (1957); and,

"2. It must be patently offensive—so offensive on its face as to affront community standards of decency. Manual

Enterprises, Inc. v. Day, 370 U.S. 478 [82 S.Ct. 1432], 8 L.Ed.2d 639 (1962); and,

"3. It must be utterly without redeeming value; hence, the good may not be weighed against the bad. Jacobellis v. [State of] Ohio, 378 U.S. 184 [84 S.Ct. 1676], 12 L.Ed.2d 793 (1964)."

It is my firm opinion that the constitutional guaranties of free speech may not properly be invoked to defeat the worthy purposes of the ordinance in question. The classification of a motion picture as "not suitable for young persons" is not by the terms of the ordinance made to depend on whether the motion picture is obscene, and I do not believe the United States Supreme Court intended, in Near v. State of Minnesota, 283 U.S. 697, 716, 51 S.Ct. 625, 75 L. Ed. 1357, 1367, or in any other case, to make such a stringent limitation on the powers of a state or city in this field.

The ordinance under examination, in defining the phrase "not suitable for young persons," does not employ the words "obscene" or "obscenity." The portrayal of sexual promiscuity in a motion picture may be accomplished with such finesse, or in such a subtle manner, that many would not consider it obscene; yet, by its very adroitness or subtlety promiscuity would be made to appear to a young person to be highly desirable or praiseworthy and acceptable or commonly accepted. Conveying to young persons the idea that to be able to enjoy the pleasures of sexual gratification without being burdened with any accompanying responsibility or commitment, and with no retributive consequences, or even the slightest remorse, is acceptable behavior according to accepted standards of the American community, would in my opinion have a much more pernicious effect on the morals of the community than mere obscenities. To say that a community is powerless to protect itself and its youth from such damage because of the constitutional safeguards of free speech is to my mind unconscionable and unacceptable.

We are also asked to dissolve the temporary injunction because the order does not contain a recitation of the judge's reasons for issuing the same, as required by Rule 683, T.R.C.P. It is true that this order merely recites that all parties were represented by attorneys and in person, that they announced ready for trial and that the court, after hearing the testimony and argument of counsel, and after having fully considered the same, together with the viewing in person of the motion picture "Viva Maria", is of the opinion and finds that the appellee is entitled to a temporary injunction. The order then proceeds to grant the temporary injunction. It is also true that several Texas cases have held that this requirement of Rule 683 is mandatory and that the omission of the reasons for granting the injunction is fatal and requires reversal. Miller v. State, Tex.Civ.App., 305 S.W.2d 663, no wr. hist.; Northcutt v. Waren, Tex.Civ.App., 326 S.W.2d 10, wr. ref. n. r. e.; City of Houston v. Rose, Tex. Civ.App., 361 S.W.2d 477, no wr. hist.

In Miller v. State, supra, the temporary injunction had been granted without notice to the defendant and without a hearing. There was neither pleading nor evidence that irreparable wrong, damage or injury was imminently threatened. The order did not state the reasons for its issuance. For all of these reasons the order was reversed and remanded.

In Northcutt v. Waren, supra, there were also additional substantial grounds for reversal.

In City of Houston v. Rose, supra, although the failure to state the reasons for the injunction seems to have been the only ground on which the order was reversed, it was pointed out in the opinion that in several cases it had been held that the failure to set forth the reasons for granting a temporary injunction would not require a reversal "where the record affirmatively shows that no harm resulted."

It seems to be well settled by the following authorities that Rule 683 does not require a reversal when the record "affirmatively shows that no harm resulted." 31

Tex.Jur.2d, Injunctions, § 157, p. 274; O'Daniel v. Libal, Tex.Civ.App., 196 S.W. 2d 211, no wr. hist.; Gonzalez v. Rodriguez, Tex.Civ.App., 250 S.W.2d 253, no wr. hist.; Rothermel v. Goodrich, Tex.Civ.App., 292 S.W.2d 882, 884; Payton v. Hurst, etc. Clinic, Tex.Civ.App., 318 S.W.2d 726, wr. ref. n. r. e. See also Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549, and Garcia v. Sun Oil Co., Tex.Civ.App., 300 S.W.2d 724, 735, wr. ref. n. r. e.

As pointed out in O'Daniel v. Libal, supra, "The purpose of the rule above referred to is to inform a party just what he is enjoined from doing and the reasons why he is so enjoined." It was also pointed out in that opinion that the application for temporary injunction was set down for hearing and that the appellant filed his answer, that both parties introduced several witnesses, some twenty witnesses testifying at the hearing, and that "the main and sole inquiry" was whether or not the act sought to be enjoined had or would result in a nuisance; that the appellant was familiar with the prayer of appellee's petition, had heard the statement of the court when he pronounced the judgment and that there could be "no doubt but what appellant knew what he was enjoined from doing and the reasons why."

With slight exception, the same may be said of the case at bar. Without further lengthening this opinion by reciting the evidence and the statements of the trial judge at the time he announced his decision in the presence of counsel for all parties, I would simply state that this record does affirmatively show that no harm resulted from the failure of the judge to recite specifically in his order the reasons why he granted the temporary injunction. Certainly, it will not be argued that such omission probably caused the rendition of an improper judgment or probably prevented appellants from making a proper presentation of the case to this court. Rule 434,

Appellants and appellee are each asserting substantive rights under Federal law. Appellants say the film in question is protected under the United States Constitution, while appellee asserts that the exercise of its substantive right to regulate the exhibition of the film is within the bounds of that same Constitution. Yet, we are asked to reverse this case on a purely technical, procedural rule. This we are in effect prohibited from doing by the Supreme Court of the United States in Arnold v. Panhandle & Santa Fe Ry. Co., 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889, wherein the court said that " * * * the assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice."

Rule 683, T.R.C.P., under discussion here, is purely procedural and does not involve any substantive rights of the parties. It cannot be invoked to deny the parties, appellants and appellee, of their rights under the Constitution of the United States. For this additional reason the point is overruled.

I am fully persuaded that the temporary injunction was properly granted and that it is our duty to affirm.